(No. 14877.—Judgment affirmed.)
Roy C. Bishop, Appellant, *vs.* The Bloomington Canning Company, Appellee.

*Opinion filed February 21, 1923—Rehearing denied April 5, 1923.*

1. Contracts—*construction of provision for cancellation of a contract if not satisfactory.* Where a contract for personal services involving fancy, taste, feeling or judgment provides for its cancellation by either party upon written notice in case the results are unsatisfactory, a court cannot inquire into the reasonableness of the action of the party electing to rescind it, as there is no standard for justification or condemnation of such action.

2. Same—*when agreement for services of a farm manager may be rescinded on notice.* Where a contract by a canning company for the services of an agricultural adviser for a six-year term provides that either party may cancel the contract on giving written notice at least sixty days prior to January 1 of any year, "in the event results are unsatisfactory to either party," the right of revocation may be exercised by either party upon the giving of the specified notice, provided it is exercised in good faith.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Thomas M. Harris, Judge, presiding.

McKinney, Lynde & Grear, and Frank O. Hanson, for appellant.

Livingston & Whitmore, and Morrissey, Sullivan & Rust, for appellee.

Mr. Justice Carter delivered the opinion of the court:

Appellant, who was an agricultural supervisor, entered into a contract with the appellee canning company, which owned or controlled several farms in McLean county and also conducted a canning business, wherein appellant agreed to manage certain portions of appellee's business from Jan-

uary 1, 1919, for a six-year term, with the privilege of re-
newing the contract under certain conditions. On or about
October 27, 1919, appellee notified appellant it would refuse
to be further bound by the contract or permit him to carry
out his part thereof, whereupon appellant brought suit for
damages. The demurrer of appellee was sustained to the
declaration, and appellant electing to stand by the declara-
tion, judgment was entered against him in the circuit court.
He thereupon took the case to the Appellate Court by ap-
peal, where the judgment of the circuit court was affirmed,
and a certificate of importance being granted, the cause has
been brought here by appeal.

The contract in question is rather lengthy, containing
many details as to appellant's duties, they being enumerated
under sub-heads "Soil," "Crops," "Catch Crops," "Control
of Diseases," "Cultivation," "Harvesting," "Livestock,"
"Seed," "Farm Records," "Corn Improvement," and un-
der certain other provisions. Under the conditions of these
various paragraphs the appellant was required to familiarize
himself with the soil of each of the farms by making soil
surveys, arrange for crop rotation, develop catch crops,
such as clover, etc., for fertilizing, and as far as possible to
discover and eliminate crop diseases; to develop approved
methods of cultivation as applied to the different types of
soil and physical conditions; to devise a plan of co-opera-
tion with the farmers for raising crops for canning by the
defendant, including the development of a bonus plan to
procure the largest possible crops; to utilize catch crops as
feed and fodder for the company's work animals; to de-
velop the highest possible efficiency in the matter of select-
ing, testing and preparing seed corn for use; to keep a
history of the work done in the various fields and by vari-
ous divisions or departments for purposes of comparison,
and so far as possible to improve by selective breeding the
quality and flavor of the corn being planted and canned.
The contract also provided that appellee was to pay appel-

lant for these services a cash salary of $1800 a year, and was also to give him all the factory wastes for feeding purposes on land leased by appellee, such as cobs, husks, washings and other wastes that do not enter into appellee's finished product; that appellant was to have the necessary time to cultivate and utilize in a reasonable manner said wastes, provided it did not interfere with the efficient performance of his duties to appellee; that the manure resulting from the feeding of cattle on the waste products was to belong to appellee; that appellant was also to have, as additional compensation for his services, the right to pasture all of the land cultivated and cropped by appellee at all of its factories, except such pasture as appellee needed for its own work animals. There was a further provision that the cultivation or delivery of crops or the preparation of the soil should not conflict with good farm practice, and that appellee in leasing its farms should avoid restrictions in its leases as to pasture lands, and it further agreed that all leases drawn after the date of the agreement would require a provision for pasturing, so far as it would not seriously interfere in the successful carrying on of appellee's business. Appellee was also to pay all necessary and reasonable expenses of appellant, including the furnishing of a gasoline car, and appellant was to have during December, January and February greater personal freedom in the conduct of the business than the work would permit during the other months of the year. The contract further contained this provision, which is the chief point of this litigation: "It is further agreed that in event results are unsatisfactory to either party, either from standpoint of financial profits or for any other good or sufficient reason, cancellation of the contract or agreement can be effected by the giving of written notice, either party to the other, at least sixty days previous to January 1 of any year during term of agreement."

The declaration contained a special count and the common counts, and a special demurrer was filed to the special

count. After the demurrer to the special count was sustained appellant withdrew the common counts and elected to stand by the special count. The special count alleged, among other things, that appellee "without any reasonable or just cause wrongfully refused to do or perform any or all of the acts or things of it required by said agreement," etc.

The principal if not the sole question presented in this case is as to the proper construction of the cancellation clause. There is no direct or definite wording in the contract to indicate how the "good or sufficient reason" for determining that "results are unsatisfactory" is to be measured or how the fact of the results being unsatisfactory is to be ascertained. Counsel for appellant argue earnestly that the use of these words indicates that it was not intended that either party should have an arbitrary right to terminate the contract; that some meaning must be attached to the words "good or sufficient reason." By his declaration appellant alleges that the option could not be exercised "without reasonable or just cause," and his counsel argue that the results which the appellee might reasonably and justly expect are ascertainable by the terms of the contract, viz., "the maximum profitable production without deterioration of soil" and from the "standpoint of financial profits." In discussing contracts of this nature with reference to the cancellation of the same, it is stated in 12 Corpus Juris, sec. 768, p. 675: "Contracts in which one party agrees to perform to the satisfaction of the other are ordinarily divided into two classes: (1) Where fancy, taste, sensibility or judgment are involved; and (2) where the question is merely one of operative fitness or mechanical utility. In contracts involving matters of fancy, taste or judgment, when one party agrees to perform to the satisfaction of the other he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied where he asserts that he is not."

From the authorities cited by counsel for both parties it
seems quite clear that in construing contracts of this kind
each particular case must rest on the contract as well as on
the facts shown with reference thereto.  In discussing the
question as to the power of cancellation of contracts it is
stated in 6 R. C. L. p. 922: "The requirement of 'good
cause' as something on which the right to revoke by one or
the other should depend has been declared to be too vague
to be fairly intelligible.  In such a connection it has no such
distinct sense as to furnish a common and intelligible cri-
terion for the parties or any determinate sense whatever.
*  *  *  The effect of prescribing such a ground of revo-
cation is, that as the passage in question is ineffective on
account of its radical uncertainty there is nothing to de-
tract from the exercise of the right of revocation at any
time for cause assigned in good faith."  See to the same
effect, 1 Beach on Modern Law of Contracts, sec. 76, and
*Cummer* v. *Butts,* 29 Am. Rep. (40 Mich. 322,) 530.

It seems obvious under the authorities that such a clause
as is here under consideration is so uncertain that there is
nothing to prohibit the exercise of the right of revoca-
tion as it actually occurred, provided appellee acted in good
faith.  It is apparent from the decisions that where a per-
sonal thread runs through an agreement as to the services
of one of the parties he is prevented from questioning the
ground of decision of his employer, and the courts have
usually held the rule to be that not only in matters of fancy,
taste or feeling, but also in matters of judgment, there is
no absolute standard as to what is good or bad, and hence
that leaves each party free to act on his own ideas or preju-
dices, as the case may be.  (9 Cyc. 618.)  In this class of
cases the right of decision is completely reserved to the
promisor without his being required to disclose reasons or
account for his course, and a right to inquire into the
grounds of his action and overrule his determination is ab-
solutely excluded from all other tribunals.  "But when the

consideration furnished is of such a nature that its value will be lost to the plaintiff, either wholly or in great part, unless paid for, a just hesitation must be felt and clear language required before deciding that payment is left to the will, or even to the idiosyncrasies, of the interested party. In doubtful cases the courts have been inclined to construe agreements of this class as agreements to do the thing in such a way as reasonably ought to satisfy the defendant." (6 R. C. L. 955.) It is to this class of cases that plainly must be assigned the decision of this court in *Union League Club* v. *Ice Machine Co.* 204 Ill. 117, which is so earnestly relied on by counsel for appellant. That said decision does not control in cases where the contract involves the fancy, taste, feeling or judgment of the parties is also clearly shown by the decision of this court in *Temby* v. *Brunt Pottery Co.* 229 Ill. 540, where the court considered and passed upon a similar question and distinguished the *Union League Club case, supra,* saying (p. 544) : "The contract fixes no standard, other than the discretion of the complainant, for acceptance of orders, from which a court or jury or anyone else would be authorized to say that the complainant ought to have been satisfied with any order which it rejected." In cases where personal taste, fancy or feeling may intervene, satisfaction to the particular person to be satisfied is not susceptible of a similar standard of measurement. (*Joliet Bottling Co.* v. *Brewing Co.* 254 Ill. 215; *Kendall* v. *West,* 196 id. 221.) In this last case it was, in effect, held that the judgment of the party should be classed with the elements of taste, fancy and feeling, contrary to the argument of appellant.

Under the sub-head "Corn Improvement" the contract states : "By selective breeding to improve as much as possible the size and yield and flavor of varieties of corn over the term of this contract." The contract also provides for "the maximum profitable production without deterioration of soil," considered from the standpoint of financial profits.

It is manifest that under both of these provisions it would be most difficult, if not impossible, to fix any standard or measure by which it could be determined whether or not any particular manager had obtained the maximum production to be obtained without deterioration of the soil, or produced corn improvement by selective breeding so as "to improve as much as possible the size and yield and flavor of varieties of corn." It would be difficult to determine whether appellee should have been satisfied with any particular fixed financial profit, as it would also from the provisions of the contract whether appellant should be satisfied with a fair remuneration from pasturage and other features of receipts, and how it would be possible to ascertain by any reasonable standard whether the work had been carried on in such a manner as "to improve as much as possible the size and yield and flavor of varieties of corn."

The services of appellant might well be held in the nature of the highest class of professional services and were also in a large measure personal to the employer. Between the appellant and the appellee they involved relations similar to those of master and servant. Such relations are private and confidential, intimate and personal. In construing such contracts the courts have generally held that the cause of cancellation was based upon the principle of those contracts where the cancellation depends upon no absolute standard, but on the fancy, taste, feeling or judgment of the party who is dissatisfied. In view of the personal relationship existing between appellant and the canning company, and the various possible grounds for dissatisfaction of an employer with an employee, and the difficulty of a jury or court of judging as to the reasonableness of his employer's dissatisfaction, considering the contract as a whole and with a proper interpretation of its various parts, we think a reasonable interpretation of the cancellation clause is to hold that either party might cancel the contract on sixty days' notice prior to January 1, provided he acted in good faith

and without fraud.  In addition to the authorities already cited we are of the opinion that the reasoning of the following authorities tends strongly to support the same conclusion:  *Tiffany* v. *Pacific Sewer Pipe Co.* 6 A. L. R. 1493, and cases cited in notes 1497 to 1503;  *American Music Stores* v. *Kussell,* 232 Fed. Rep. 307;  *Oakland Motor Co.* v. *Indiana Automobile Co.* 201 id. 499;  *Isbell* v. *Anderson Carriage Co.* 170 Mich. 304.

In our judgment the trial and Appellate Courts rightly construed the cancellation provision of the contract.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

---

(No. 14297.—Reversed and remanded.)
Murray Wolbach, Appellant, *vs.* Charles Rubens *et al.* Appellees.

*Opinion filed February 21, 1923—Rehearing denied April 4, 1923.*