## R. F. Trevellick, Plaintiff in Error, v. Western Vaudeville Managers Association, Defendant in Error.

### Gen. No. 29,431.

1. MASTER AND SERVANT—*construction of employment contract as to right of discharge for unsatisfactory services.* Under a contract providing that an employee "agrees to perform his services to the satisfaction of the general manager of said association," the defendant had the right to discharge the plaintiff if his services were not satisfactory to it, but it did not have the right to discharge plaintiff on the pretended ground of dissatisfaction with his services if the real reason was his refusal to make a new contract.

2. MASTER AND SERVANT—*when verdict improperly directed for master in action by servant for compensation.* In an action on a written contract by a discharged employee to recover for the balance of wages and commissions under a contract which gave the employer the right to discharge the employee if his services were unsatisfactory, where plaintiff's evidence taken alone tended to show that he was not discharged by reason of the terms of the contract but for a reason outside the contract, it was for the jury to determine whether the defendant acted by reason of being dissatisfied with plaintiff's services or because he would not accept a new

contract providing for different compensation, and a verdict was improperly directed for the defendant.

Error by plaintiff to the Municipal Court of Chicago; the Hon. THOMAS J. PEDEN, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1924. Reversed and remanded. Opinion filed June 17, 1925.

BEREZNIAK & DITTUS, for plaintiff in error.

GEORGE A. TRUDE, DAVID W. KAHANE and FRANK T. PLATKA, JR., for defendant in error.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, Trevellick, having a written contract of employment with the defendant, Western Vaudeville Managers Association, a corporation, and having been discharged, brought suit, in a fourth-class case in the municipal court, for an alleged balance of wages and commissions. There was a trial before the court with a jury and at the close of all the evidence the trial judge directed a verdict for the defendant. A verdict, accordingly, was returned and the trial judge entered judgment that the plaintiff take nothing by his suit. This writ of error is prosecuted to reverse that judgment.

The plaintiff had worked as a traveling representative in the theatrical business for over thirty years. The defendant, with offices in Chicago, was a corporation that made contracts with fair committees and other similar organizations to furnish circus, theatrical, acrobatic and other ''acts'' for a fixed price. On November 23, 1914, the plaintiff and the defendant entered into a written agreement of employment. The term of the employment was from November 23, 1914, to September 1, 1915, defendant having the privilege of extending it for a year. The plaintiff was to act as a traveling representative and solicitor for the defendant's fair and park department. It was pro-

vided, further, as follows: "Said Trevellick hereby enters the service of said association in the capacity aforesaid and agrees to devote all of his time, energy and ability for the best interests of said association in procuring business and contracts with fairs, parks, expositions, celebrations, circuses, carnivals and other similar places of amusement, and further agrees to perform his services to the satisfaction of the general manager of said association and at all times to abide by and conform to all of the rules and regulations of said association and to obey and act in accordance with the directions and instructions of the directors and general manager of said association and of the manager of the park and fair department of said association." He was to receive for his services a salary of $100 a week, and, in addition thereto, a sum equal to 10 per cent of the net profits derived from the business procured by him. The clause of the contract on that subject is as follows: "From the gross receipts realized from contracts and business procured by the said Trevellick, there shall be deducted the salary paid to said Trevellick; all salaries paid to performers; all railroad fares, excess baggage and cartage charges and all traveling expenses paid by the said association, all telephone and telegraph charges and all other expenses directly chargeable against any of the contracts or business procured by the said Trevellick, any and all losses arising out of contracts or business procured by the said Trevellick including losses sustained by the failure of either party to said contract to fulfill the same and all losses sustained by the failure to collect the amount due under said contracts. The amount remaining after making the deductions herein above provided shall be deemed the 'net profits' as referred to herein and said Trevellick shall be entitled to receive ten per cent thereof. It is expressly understood and agreed that said Trevellick shall pay his own railroad fares, hotel bills and other traveling expenses." It was provided that an adjustment and

settlement of the amount of net profits earned and the compensation due the plaintiff should be made about December 1, 1915, and that his salary of $100 a week should begin on February 1, 1915.

The plaintiff went to work under the contract, traveling practically continuously for some time in Minnesota, Wisconsin, Kansas, Nebraska and other States, securing, altogether, about 38 contracts with State and county fairs, and mailing them into the offices of the defendant. From time to time he telephoned in from wherever he was to the defendant in Chicago and received, also, from time to time, letters of advice from his employer, the defendant.

On July 11 or 12, 1915, he was requested by the defendant to come back to Chicago. He came back and went to the offices of the defendant and was there told either by Singer, the general manager of the defendant, or Marsh, also a manager, that he was discharged. After that time he did no further work under his contract.

Inasmuch as the trial judge, upon motion of the defendant at the close of all the evidence, gave a peremptory instruction to the jury, directing them to find the issues for the defendant, the question arises whether there was evidence on the part of the plaintiff which should have been submitted to the jury.

It is the claim for the defendant that it had the right under the contract to discharge the plaintiff if his services were not satisfactory to the defendant, and that it did discharge him because his services were not satisfactory to it. In answer to that, it is claimed for the plaintiff that there was evidence tending to show that the plaintiff was not discharged on account of his unsatisfactory services, but because the plaintiff refused to enter into a new and different contract with the defendant.

The plaintiff testified that before being discharged he was called to Chicago and offered a new contract, and upon his refusal to accept it, before the expiration

of the one that existed, he was discharged, and it is urged that that testimony was sufficient to make it necessary to submit the case to the jury in order that they might determine whether the defendant's alleged dissatisfaction was genuine, and the real cause of plaintiff's dismissal.

The words of the contract are that the plaintiff "agrees to perform his services to the satisfaction of the general manager of said association." According to the law, as we understand it, under the contract in question the defendant had the right to discharge the plaintiff if his services were not satisfactory to it, but it did not have the right to discharge him on the pretended ground of dissatisfaction with his services, if the real reason was his refusal to make a new contract. We know of no case where the employment and the words of the contract are in any close way similar to those here, where it has been held that the contract might be canceled, even though the defendant did not act in good faith. Even in such a case as *Bishop v. Bloomington Canning Co.*, 307 Ill. 179, where the contract in question was one for the personal services of an agricultural adviser, and the contract provided that it might be canceled by either party "in the event results are unsatisfactory to either party," the court held that the right of revocation might be exercised by either but "provided he acted in good faith and without fraud." Further, the court said in that case, "It seems quite clear that in construing contracts of this kind, each particular case must rest on the contract as well as on the facts shown with reference thereto." In such a case as this the employee makes out a cause of action if he proves that he was discharged before the expiration of the time provided for in the contract of employment, and either (1) that the employer was not dissatisfied with him, or (2) that the employer, whether dissatisfied or not, did not discharge him on account of dissatisfaction.

Was there enough evidence tending to show that the defendant did not discharge him because he did not render services to its satisfaction, to justify submitting it to the jury? The plaintiff testified that when in July he came back and talked with his employer for two or three days, that he and Marsh, one of the managers, talked over business in general; that Marsh asked him if it were agreeable to him to go with the defendant, after his contract expired, on a 50 per cent commission basis; to go anywhere and everywhere he could pick up business and after his expenses were taken out to split the profits; that he, the plaintiff, was agreeable to that; that he then asked Marsh about the balance of his contract; that Marsh went upstairs to see Singer, the general manager; that after that Marsh asked him to let the rest go on the new proposition and put it on a fifty-fifty basis; that he, the plaintiff, asked that the defendant complete the other contract as there were only a few weeks to go before starting on the new contract; that that was all they disagreed on; that they talked another day, off and on, and Marsh said ''it was either do as they said or get out''; that he afterwards reported about daily to work under his contract; that they refused to let him and wanted him to go out on the new basis; that he wanted to fill out the contract for the remaining weeks and then go on the new contract; that the defendant did not pay him anything after he was told to go on the new basis or quit; that he lost seven weeks, from July 16 to September 1, and 10 per cent on the net profit on the sales, which latter was due at the time he was discharged; that he had no notice at any time that the defendant was dissatisfied with him; that Marsh did not say so until after the contract had expired.

It is needless to recite the evidence of Marsh and Singer for the defendant, save to say it was to the general effect that the plaintiff was discharged because as Singer says, ''His services did not prove satisfactory.'' Taking alone the evidence for the plaintiff,

and it is quite obvious that it tended to show that he was not discharged by reason of the terms of the contract, but was discharged for a reason dehors the contract, and there was, therefore, a question of fact which the plaintiff had the right to have the jury pass upon. Under the circumstances, it was for the jury to determine whether the defendant acted by reason of being dissatisfied with the plaintiff's services or— whether dissatisfied or not—by reason of some other motive. The inference from the plaintiff's evidence is that he was discharged because he would not accept a new contract which provided for different compensation. If that were proved, then the discharge was a breach of contract. *Delano v. Columbia Machine Works,* 179 App. Div. 153, 166 N. Y. Supp. 103; *Gwynn v. Hitchner,* 67 N. J. L. 654; *Summers v. Colver,* 38 App. Div. 553, 56 N. Y. Supp. 624; *Diamond v. Mendelsohn,* 156 App. Div. 636, 141 N. Y. Supp. 775.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

O'CONNOR, P. J., and THOMPSON, J., concur.