JAMES H. RAY, Plaintiff-Appellee, *v.* GEORGETOWN LIFE INSURANCE COMPANY, Defendant-Appellant.

Third District    No. 80-229

Opinion filed April 9, 1981.

James B. Lewis, of Peoria, for appellant.

Vance C. Parkhurst, of Bartley, Fraser, Parkhurst, Hession & Renner, of Peoria, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

On April 29, 1978, defendant, Georgetown Life Insurance Company (hereinafter referred to as Georgetown), terminated the employment of plaintiff, James Ray, who was then serving as Georgetown's vice-president in charge of sales under a one-year personal service contract. Subsequently, Ray brought this instant breach of contract action against

Georgetown. Following a jury trial in the circuit court of Peoria County, a verdict was rendered for plaintiff and judgment entered thereon. It is from this judgment that defendant appeals.

We reverse.

The personal service contract that lies at the center of this controversy was executed by Ray and Georgetown, by its president, Rudolph J. Westphal, on April 24, 1978, only 5 days prior to the termination. As stated above, under the terms of this contract Ray was to serve in the capacity of Georgetown's vice-president of sales and/or sales manager for a period of not less than one year. Paragraph 8 of the contract provides, *inter alia*, that the employee (Ray) shall be in a fiduciary position with the employer, and that the employee shall have 30 days' notice "[i]n the event that EMPLOYEE fails to perform satisfactorily in the judgment of EMPLOYER, * * *." The employer/promisor's performance, then, was conditioned upon its satisfaction with the employee/promisee's performance.

■■■ Contracts wherein the promisor's performance is conditioned upon its satisfaction with the promisee's performance have traditionally been divided into two groups, depending upon whether the nature of the promisor's satisfaction is objective or subjective. In contracts involving matters of fancy, taste, sensibility and judgment, the nature of the promisor's satisfaction is subjective. Hence, "[i]n contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party the sole judge of his satisfaction without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied when he asserts that he is not." (12 Ill. L. & Prac. *Contracts* §392 (1955); *Bishop v. Bloomington Canning Co.* (1923), 307 Ill. 179, 138 N.E. 597; L. Simpson, Handbook of the Law of Contracts §149 (2d ed. 1965).) In contracts involving operative fitness or mechanical utility, the nature of the promisor's satisfaction is objective, *i.e.*, that of a reasonable man. (12 Ill. L. & Prac. *Contracts* §392 (1955); 17 Am. Jur. 2d *Contracts* §367 (1964); 17A C.J.S. *Contracts* §495(1) (1963); L. Simpson, Handbook of the Law of Contracts §149 (2d ed. 1965).) Personal service contracts such as the one in the instant case wherein performance of the promisor/employer is conditioned upon its satisfaction with the promisee/employee's performance have generally fallen into the first abovementioned category. (*Bishop v. Bloomington Canning Co.* (1923), 307 Ill. 179, 138 N.E. 597; *Kendall v. West* (1902), 196 Ill. 221, 63 N.E. 683.) Accordingly, the personal service contract executed in the case at bar must be construed as allowing termination of the promisee's employment upon the subjective dissatisfaction of the defendant promisor with the plaintiff's performance.

■■ The plaintiff's breach of contract action is based upon the theory that

his discharge after one week of work was not due to defendant's alleged dissatisfaction with his performance as Georgetown's vice-president of sales. Rather, he asserts that there was some ulterior motive for his dismissal. "In such a case as this the employee makes out a cause of action if he proves that he was discharged before the expiration of the time provided for in the contract of employment, and either (1) that the employer was not dissatisfied with him, or (2) that the employer, whether dissatisfied or not, did not discharge him on account of dissatisfaction." (*Trevellick v. Western Vaudeville Managers Association* (1925), 237 Ill. App. 493, 497.) We are of the firm opinion after examining the record that the plaintiff proved neither of these two requirements.

Outside of three rebuttal witnesses, whose testimony was limited to the subject of plaintiff's good character, only two witnesses testified for the plaintiff: Ray, himself, and Glenn Benckendorf, vice-president of Georgetown, who testified under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60). Much of their testimony related to plaintiff's handling of a dispute involving William Baumann, a company agent. Briefly, Baumann wished to write a Georgetown policy on his own life. The commission on such a policy was approximately 200% of the first-year premium. If the policy was approved, Baumann would receive one year of free life insurance and a $1599 excess cash commission. At the time, however, Baumann was indebted to Georgetown in the amount of $900. Further, Benckendorf testified that considering Baumann had not written any policies for several years, it was apparent that he was writing his policy on his own life to obtain free insurance and additional funds at Georgetown's expense. Consequently, Benckendorf decided that the $1599 would not be paid to Baumann until he had made the second and third annual policy premium payments. He informed Baumann of the company's position in a letter dated April 19, 1978. Although Ray had not been formally hired as of this date, Benckendorf had discussed the Baumann matter with him during an interview, and Ray was in full agreement with the company's position.

On Wednesday, April 26 (two days after plaintiff began to work for Georgetown), Baumann, Ray, and Ray's predecessor, Howard Hisinger, engaged in a heated discussion over the company's position regarding excess commission payments. This argument took place in Hisinger's office, and was loud enough to be overheard by at least one company employee, Debra Moody. Although Hisinger agreed with Baumann, Ray, with the approval of Benckendorf and Georgetown's president Westphal, adhered to the company position. As a result of the Baumann affair, Hisinger resigned that night.

The next day, plaintiff was in Chicago on business and did not return to Georgetown's Peoria office until late Friday afternoon. Shortly after

arriving, he was summoned to Westphal's office. Ray testified that there he was informed by Westphal that he had a "virtual mutiny" on his hands, and four key employees out of a 12-person office were threatening to leave unless Ray was dismissed. (Although Westphal did not name the four, they were Hisinger, Moody, chief underwriter Sally Bowton, and Paulette Purcell, head of the policyowner's service division.) Westphal then asked for Ray's resignation. Ray refused to resign, and the next morning he was fired by Benckendorf. When Ray asked Benckendorf to give him a specific reason for his dismissal, Ray testified that Benckendorf told him "nothing specific. It was just that the way I handled things, and I got the inference that he meant the Baumann thing which was the only thing that I had really done in the two days I had been there * * *."

On the basis of the foregoing, the plaintiff contends that it can be reasonably inferred that it was not defendant's dissatisfaction with Ray's performance during the week he was a Georgetown employee that caused his dismissal, but rather a desire on the part of Georgetown management to quell employee unrest over unpopular company policy by making the plaintiff the scapegoat of the Baumann affair. Plaintiff's theory, however, finds no support in the record, and is based on pure conjecture. Further, we fail to see how Georgetown management would be able to alleviate the discontent among its employees by firing Ray if, as plaintiff contends, it was company policy regarding the Baumann matter, and not Ray himself, that was at the root of the employee unrest.

It is manifestly evident from a review of all the evidence presented at trial that it was indeed defendant's dissatisfaction with the way Ray "handled things" that triggered his dismissal. During the three days he was actually at Georgetown's Peoria office, Ray had sarcastically reprimanded the chief underwriter in front of other Georgetown employees, had gotten involved in a shouting match over the Baumann matter with Baumann and Hisinger, argued with Moody, allegedly over the correctness of the company's position with regard to the Baumann situation, and had made denigrating comments about other Georgetown employees. His abrasive attitude and demeanor caused so much discontent in this small, 12-person office that four employees informed Westphal that they were resigning unless Ray was dismissed. Informed of plaintiff's failure to conduct himself in a manner becoming a business executive in his position, and faced with the prospect of losing one-third of the office staff, the defendant had good reason to be less than pleased with plaintiff's performance. On the basis of the evidence presented, defendant's subjective dissatisfaction with the plaintiff can be the only rational reason for his dismissal. Any other reason posited by the plaintiff finds no basis in evidence. Certainly there is no evidence of any conspiracy against Ray as suggested by him.

██ Because all the evidence, when viewed in a light most favorable to plaintiff, so overwhelmingly favors the defendant that a verdict in favor of the plaintiff cannot stand, the trial court erred in failing to grant the defendant's motion for judgment notwithstanding the verdict (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504). We therefore reverse the judgment of the circuit court of· Peoria County.

Reversed.

STOUDER and HEIPLE, JJ., concur.