**Dale E. PANKOW, Plaintiff,**

v.

**WESTAMERICA MORTGAGE COMPANY, Defendant.**

No. 87 C 790.

United States District Court,
N.D. Illinois, E.D.

May 8, 1990.

**1310**

Mark S. Dym, George W. Gessler, Gessler, Wexler, Flynn, Laswell & Fleishmann, Ltd., Chicago, Ill., for plaintiff.

Gerald D. Skoning, James P. Osick, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Dale Pankow brought this two-count action against defendant WestAmerica Mortgage Company (WestAmerica) seeking recovery for unjust enrichment and for breach of an oral contract of employment. We have before us defendant's motion for summary judgment on Count I, the contract claim. For the following reasons, the motion is denied.

## FACTUAL BACKGROUND

On January 30, 1984, WestAmerica's agent, Ron Schweigert, hired Plaintiff as a correspondent liaison in defendant's Chicago office. At the time of hiring, and on at least one additional occasion, Schweigert told Pankow that as long as he performed satisfactorily, his job was secure. Schweigert further said that if Pankow did not perform adequately, he would receive oral and written warnings and a chance to improve before being fired. No WestAmerica representative, however, explicitly told Pankow that he could be fired only for cause. There was no written contract and no other references as to how long the

employment relationship was expected to last.

In June, 1984, WestAmerica distributed handbooks to its employees. Pankow received a copy and signed, without reading, a form WestAmerica included in the handbook. It said "Your employment at WestAmerica is at will. Verbal promises, promotions, pay increases, policies and the receipt of this handbook does not constitute a contract of employment."

Pankow alleges that he was performing his job satisfactorily, yet he was fired in August, 1986, without cause and without any prior oral or written warnings. Pankow thus contends that his firing breached the terms of what he contends is an enforceable oral contract made when he was hired.

Pankow filed suit alleging breach of contract in Count I and unjust enrichment in Count II. WestAmerica has moved for partial summary judgment, asking that we dismiss Count I on the grounds that Pankow was an employee at will.

### DISCUSSION

At common law, the typical relationship between an employer and an employee could be terminated by either party at any time and for any reason. While this employment at will is subject to the law of contract, in that employees can demand that they receive the previously-agreed price for their labor, at-will employees traditionally could not complain about the conditions, procedures, timing, or reasons for their firing. They had no job security.

Employers no longer enjoy an absolute right to fire employees for any reason or for no reason at all. Statutes now forbid employers to fire employees because of, *inter alia,* their race, sex, age, religion, pregnancy, or their efforts to organize a union. Judicial decisions forbid employers to discharge employees for reasons that violate a clearly mandated public policy. *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 525, 478 N.E.2d 1354, 1356, 88 Ill.Dec. 628, 630 (1985). Thus, employers may not fire employees for filing claims under the Workmen's Compensation Act, *Kelsay v.*

*Motorola, Inc.,* 74 Ill.2d 172, 181, 384 N.E.2d 353, 357, 23 Ill.Dec. 559, 563 (1978), or for reporting criminal conduct to the police. *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 132, 421 N.E.2d 876, 879, 52 Ill.Dec. 13, 16 (1981).

As the Supreme Court of Illinois has recognized, employees may also gain job security by contracting for it:

> The majority of courts ... interpret the general "employment at-will rule" as a rule of construction mandating only a presumption that a hiring without a fixed term is at will, a presumption which can be overcome by demonstrating that the parties contracted otherwise.

*Duldulao v. Saint Mary of Nazareth Hospital,* 115 Ill.2d 482, 489, 505 N.E.2d 314, 318, 106 Ill.Dec. 8, 12 (1987).

The *Duldulao* case joined a national trend that makes it easier for many employees to argue that they have more rights to job security than common law employees at will. In *Duldulao,* the court held that an employer was contractually bound to follow the disciplinary and termination procedures outlined in a handbook that it distributed to all employees. The court said it would find a contract when it found the familiar elements of contract formation: offer, acceptance, and consideration. The court reasoned that the specific terms and conditions of employment clearly described in the handbook constituted an offer of a unilateral contract. By continuing to work after receiving copies of the handbook, employees accepted the terms of that offer. Their labor provided the necessary consideration and thus created a contract. With no handbook, the employees in *Duldulao* would have remained employees at will. With the handbook, however, they had a contract they could enforce in court. The *Duldulao* court noted that employers could always add disclaimers in language that prevented reasonable employees from reading the handbook as an offer of contractual terms. In such a case, there would be no offer for the employees to accept and no contract could be formed.

Pankow does not contend here that any handbook states the terms of the contract he seeks to enforce. Pankow contends instead that he and WestAmerica entered into an oral contract that provided Pankow with more job security than an employee at will would enjoy. Specifically, Pankow asserts that his oral contract provided that he could continue to work as long as he performed satisfactorily and that he could be discharged for unsatisfactory performance only if he first received oral and written warnings and a chance to improve his performance.

WestAmerica admits its agent made these promises to Pankow but contends that they are not enforceable terms of the employment relationship. First, WestAmerica contends that its representations were not clear and definite enough to sustain a claim that they became part of an enforceable oral contract of employment under Illinois law. Second, WestAmerica argues that Pankow was an employee at will because the handbook and the signed disclaimer said so.

*The initial arrangement*

█ Pankow does not allege that he had a contract with a specific duration. Thus, according to the Illinois Supreme Court, there is a presumption that the employment arrangement was at will. That presumption can be overcome by evidence that the parties contracted otherwise. *Duldulao, supra,* 115 Ill.2d at 489, 505 N.E.2d at 318, 106 Ill.Dec. at 12. Here, Pankow asserts that he contracted for terms that limit WestAmerica's ability to fire him at will.[1]

Because of the common law tradition that employers may fire employees at will, courts have sometimes been leery of em-ployees' claims that they made oral contracts providing for job security. Some courts have looked for some sort of additional consideration, beyond the employee's exchange of services for payment, before enforcing the employee's claim that additional promises of job security comprised an enforceable part of the employment arrangement. *E.g., Ladesic v. Servomation Corp.,* 140 Ill.App.3d 489, 492–93, 488 N.E.2d 1355, 1357–58, 95 Ill.Dec. 12, 14–15 (1st Dist.1986).

Another view, however, notes that the key question in analyzing a contract is to determine the intent of the parties. When that intent is clear and unambiguous, and the parties bargained for and exchanged mutual promises, additional consideration is not necessary. This view regards additional consideration as evidence of the parties' intent but not an independent requirement of every enforceable oral contract. *See Martin v. Federal Insurance Co.,* 109 Ill.App.3d 596, 602, 440 N.E.2d 998, 1003, 65 Ill.Dec. 143, 148 (1st Dist.1982).

█ In an earlier case in this court, we determined that the Illinois Supreme Court would enforce a clear and unambiguous oral contract of employment without requiring additional consideration. *See Kula v. J.K. Schofield & Co., Inc.,* 668 F.Supp. 1126, 1130–31 (N.D.Ill.1987). Following the Illinois court's reasoning in *Duldulao,* we thus concluded that the primary question is whether the parties formed a contract; that is, whether there was a clear and definite offer, an acceptance, and consideration. As the employee's performance could function as consideration in *Duldulao,* we see no reason why Pankow's performance could not also serve as consideration.[2]

---

**1.** The case law sometimes contrasts employees at-will with permanent employees. Indeed, in his briefs, the plaintiff in this case characterizes himself as a "permanent employee" who could be fired only under certain conditions. Yet it is difficult to glean from the cases either a consistent definition of permanent employment or a clear view of its legal status.

Consequently, we have analyzed the issues in this case without resort to the term "permanent employee." The question is whether Pankow had an enforceable agreement that limited, in specific ways, WestAmerica's ability to fire him.

**2.** Pankow appears to have a stronger argument than the employee in *Duldulao,* who formed a unilateral contract by continuing to work after a handbook was distributed. Pankow can show that WestAmerica's promises formed a part of his employment relationship from the very beginning. Thus, Pankow has a better case for showing that he bargained for the promise of job security.

WestAmerica, moreover, does not contend that Pankow's alleged contract fails for lack of consideration. WestAmerica contends that its promises were not certain and definite enough to constitute an offer that could transform an otherwise at-will relationship into an enforceable contract. It cites cases that note that in Illinois, employers in an otherwise at-will relationship do not limit their right to fire by merely promising to retain employees as long as their performance is satisfactory.[3] *See Gordon v. Matthew Bender & Co.,* 562 F.Supp. 1286, 1291 (N.D.Ill.1983); *Ray v. Georgetown Life Insurance Co.,* 94 Ill. App.3d 863, 865, 419 N.E.2d 721, 722, 50 Ill.Dec. 613, 614 (3d Dist.1981).

■ We do not need to evaluate whether the Illinois Supreme Court would follow the reasoning of these cases today,[4] because they do not control the case at bar. WestAmerica did not simply promise to retain Pankow as long as he performed satisfactorily. It also promised to warn Pankow of any inadequate performance and to give him a chance to correct it. In arguing that the promises are not sufficiently clear and definite to form a contract, WestAmerica's briefs say nothing about this additional promise. This is a motion for summary judgment, and it is WestAmerica's burden to persuade us that its promises are not clear and definite enough to sustain a claim in contract. As we believe that a reasonable factfinder could conclude that the promises, taken together, are sufficiently clear and definite, WestAmerica has failed to carry its burden. We therefore cannot rule that WestAmerica has shown, as a matter of law, that Pankow was an at-will employee when he began his job.

## The disclaimer

■ WestAmerica argues that Pankow was an at-will employee because both the handbook and the disclaimer Pankow signed say so. WestAmerica is quite correct in arguing that employers may simultaneously preserve the at-will employment relationship and distribute handbooks to employees. As long as the handbook contains a conspicuous provision announcing that it does not constitute an offer or the terms of a contract, no contract will form.

In this case, however, Pankow contends that he already had an enforceable contract that gave him more rights than an at-will employee. If Pankow is correct, and for this inquiry we assume he is, then the proper question is whether the disclaimer modified that contract and transformed Pankow into an employee at will. We conclude it did not.

Parties to a contract are free to modify their agreement, but the changes are subject to the rules that govern formation of all contracts. "A valid modification must meet all the criteria essential for a valid contract: offer, acceptance, and consideration." *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 776 F.2d 198, 208 (7th Cir.1985) (interpreting Illinois law).

Pankow contends that the disclaimer did not modify his contract because he received no consideration. When WestAmerica distributed its handbook, it was already under a contractual duty to follow certain proce-

---

Furthermore, Pankow has asserted that he did not approach WestAmerica for a job; WestAmerica solicited Pankow while he was working for another company. Thus Pankow may be able to show that he was lured from his previous job by the terms and conditions offered by WestAmerica. Such an inducement may satisfy the requirement of "additional consideration" that some courts require before finding an enforceable oral contract providing for job security. *See Kula,* 668 F.Supp. at 1132.

3. Throughout its briefs, WestAmerica also cites numerous cases from other jurisdictions, particularly from the Sixth Circuit and federal courts sitting in Michigan. Our task is to ascertain Illinois law, particularly how the Illinois Supreme Court would resolved the issues before us. We therefore find many of WestAmerica's cases to be of only limited persuasive value.

4. Both cases precede *Duldulao* and rely on a turn-of-the-century opinion in which the Illinois Supreme Court held that an agreement to retain an employee as long as he performed satisfactorily was terminable at the will of the employer. *See Kendall v. West,* 196 Ill. 221, 63 N.E. 683 (1902). *See also Vogel v. Pekoc,* 157 Ill. 339, 42 N.E. 386 (1895) (cited in *Gordon,* 562 F.Supp. at 1291).

dures before firing Pankow. WestAmerica has not suggested that it gave Pankow anything or gave up anything in return for Pankow's signing the disclaimer and surrendering whatever contractual rights to specific disciplinary procedures and job security he enjoyed. Moreover, WestAmerica does not contend that it bargained for Pankow to modify his status and become an employee at will.

■ Adapting the reasoning of the *Duldulao* case, WestAmerica argues that by continuing to work after signing the disclaimer, Pankow accepted the revised terms offered in the handbook. Furthermore, WestAmerica argues that Pankow's continued performance constituted consideration for the contract modification. That argument fails. Pankow's continuing to work does not suggest he intended to renounce his rights to job security. Under the oral contract that governed his employment from the beginning, Pankow could continue to work and receive in return both his pay and the limited job security that WestAmerica had promised. Thus, even after signing the disclaimer, Pankow's continuing to work could just as easily represent his continuing performance and assertion of rights under the pre-existing contract.

Furthermore, WestAmerica's argument turns the doctrine of consideration upside down. If the contract were modified as WestAmerica contends, then Pankow gave something up—the protection of specific termination procedures. To find consideration, we must find some benefit to Pankow, some detriment to WestAmerica, or some evidence that the modification was the product of bargaining or mutual agreement. We don't have it here. We have the opposite. Pankow's continued performance simply conferred a benefit on WestAmerica. Thus we cannot, as WestAmerica suggests, find that Pankow's continued performance constituted consideration for the purported modification of the contract.

In conclusion, nothing suggests that Pankow received any consideration for giving up the valuable terms of the alleged oral contract under which he began working for WestAmerica. We therefore conclude that if Pankow can show he started work under an enforceable oral contract that provided for specific disciplinary procedures, he did not modify or rescind that contract by signing the document that declared he was an employee at will.

WestAmerica has thus failed to persuade us that Pankow must be considered an employee at will as a matter of law. It is thus inappropriate to award WestAmerica summary judgment on the contract claim.

## CONCLUSION

For the foregoing reasons, WestAmerica's motion for summary judgment on Count I is denied.