GARY R. BEASLEY *et al.*, Plaintiffs-Appellants, v. ST. MARY'S HOSPI-
TAL OF CENTRALIA *et al.*, Defendants-Appellees.

Fifth District No. 5—89—0003

Opinion filed July 26, 1990.

Bruegge & Becker, of Breese (William J. Becker, of counsel), for appellants.

James W. Wham, of Wham & Wham, of Centralia, for appellees.

JUSTICE HARRISON delivered the opinion of the court:
Plaintiffs, Dr. Gary R. Beasley and Total Health Physicians, S.C.

(THP), appeal from a judgment of the circuit court of Marion County which dismissed, with prejudice, their fifth amended complaint against defendants, St. Mary's Hospital of Centralia and Sister M. Clarette. The dismissal was made pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), and the sole question presented for our review is whether the circuit court erred in concluding that plaintiffs' complaint failed to state a cause of action upon which relief may be granted. (See *Wooded Shores Property Owners Association, Inc. v. Mathews* (1976), 37 Ill. App. 3d 334, 337, 345 N.E.2d 186, 189.) For the reasons which follow, we affirm in part and reverse in part and remand for further proceedings.

In ruling on a motion to dismiss, a court must accept as true all well-pleaded facts in the pleading attacked, as well as all reasonable inferences which can be drawn from those facts that are favorable to the pleader. (*Bertetto v. Sparta Community Unit District No. 140* (1989), 188 Ill. App. 3d 954, 955, 544 N.E.2d 1140, 1141.) A cause should not be dismissed on the grounds that the pleadings fail to state a cause of action unless, clearly, no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (188 Ill. App. 3d at 955, 544 N.E.2d at 1141.) Where, however, a complaint is stricken and the plaintiff does not seek leave to amend, this will be considered an election to stand by the stricken complaint, and if the lawsuit is dismissed, the cause of action must stand or fall upon the contents of that complaint alone. *Robbins v. City of Madison* (1990), 193 Ill. App. 3d 379, 381, 549 N.E.2d 947, 948.

Such an election was made in this case. The record before us shows that plaintiffs amended their complaint several times during the course of this litigation. Their fourth amended complaint was ultimately dismissed for failure to state a cause of action, and the circuit court granted them leave to amend their complaint once again, which they did. After their fifth amended complaint was dismissed, however, plaintiffs advised the circuit court that they did not wish to make any further amendments. Accordingly, it is solely on the sufficiency of the allegations set forth in their fifth and final amended complaint that the viability of plaintiffs' cause of action must turn.

Plaintiffs' fifth amended complaint contains eight counts. Counts I and II are based on breach of contract. Counts III through VIII allege defamation. We shall consider the sufficiency of each of these counts *seriatim.*

The breach of contract claim asserted in count I is brought by plaintiff Beasley against defendant St. Mary's Hospital. According to the allegations in that count, Beasley was hired by St. Mary's Hospi-

tal as an emergency room physician. The terms of his employment were contained in a written agreement which is attached as an exhibit to the complaint. The agreement was signed by Beasley and by defendant Sister M. Clarette, on behalf of defendant St. Mary's Hospital, on February 25, 1986. By its terms, the agreement was to expire on September 30, 1987, subject to certain qualifications. Paragraph 26 of the agreement provided, however, that plaintiff Beasley

"shall meet his obligation to provide services under the terms of this Agreement including but not limited to (a) meeting and continuing to meet the criteria for medical staff bylaws, (b) having been granted and maintaining clinical privileges to practice commensurate with the procedures he shall be performing, (c) remaining satisfactory to the Hospital in the performance of his duties, and (d) complying with the Hospital and medical staff bylaws, rules and regulations, and with the policies and directives of the Hospital and the Critical Care Committee of the medical staff. If at any time [Beasley] fails to meet these requirements, the Hospital may, at its option, immediately terminate this Agreement."

Beasley avers that from February 25, 1986, until September 24, 1986, he performed "all of his obligations under said contract in a professional manner and performed all other conditions precedent under the contract," but that on September 24, 1986, St. Mary's Hospital wrongfully breached the agreement by terminating his services. The notice of termination, signed by defendant Sister M. Clarette in her capacity as president and chief executive officer of St. Mary's, is attached as a second exhibit to the complaint. That notice states:

"Dear Dr. Beasley:

You received a letter from Mr. Philip Azar, hospital attorney, formally notifying you that in the event you are the cause of any future incidents while functioning as the Emergency Room physician, the Hospital will exercise its option to terminate your services under the Emergency Room agreement.

On September 13, 1986, Mr. Clyde Wangler presented himself at St. Mary's Hospital Emergency Room in physical distress. After review of the entire incident, your unwillingness to provide the minimal amount of emergency intervention in lieu of the arrival of Dr. Pernot, in my estimation, borders on gross neglect. St. Mary's Hospital cannot and will not tolerate this type of patient care in our Emergency Room.

For this reason, this letter serves as an official notice that your contractual arrangement as an Emergency Room physi-

cian is terminated effective immediately.

The second incident that pales when compared to the Wangler case occurred on September 19, 1986 when irresponsible opinions were expressed by you in an audible manner regarding a patient seeking care at St. Mary's Hospital. The patient clearly heard you state that she should be charged a million dollars for coming here with a sore throat. Once again, you have been warned about this disruptive and unprofessional behavior. We will not tolerate this any further."

Beasley alleges that St. Mary's decision to terminate his services constituted a breach of the parties' agreement because the accusations made against him by Sister M. Clarette in the foregoing letter regarding his failure to provide adequate care to Mr. Wangler were untrue, and he did, in fact, perform his duties under the agreement in an objectively reasonable fashion. Beasley further alleges that as a direct and proximate result of St. Mary's breach of the agreement, he sustained substantial pecuniary losses.

Count II of plaintiffs' complaint is based on the same theory of recovery and alleges the same basic facts as count I. The only significant difference is that count II is brought on behalf of plaintiff THP, not Beasley. In that count, THP claims that it is entitled to damages for St. Mary's breach of contract with Beasley because Beasley had an agreement with THP under which all monies which he received in payment for his performance of professional services belonged to THP. THP alleges that St. Mary's Hospital had been notified that payments due Beasley under his emergency room agreement were to be made to THP and that THP had the right to receive income under the emergency room agreement as Beasley's assignee.

We agree that counts I and II were properly dismissed by the circuit court. As a general rule, a private hospital has the right to exclude any physician from practicing therein. Accordingly, decisions of private hospitals respecting the termination or curtailment of existing privileges of doctors on their medical staffs are subject only to limited judicial review to determine whether such decisions were rendered in compliance with the bylaws of the institution. (*Pulido v. St. Joseph Memorial Hospital* (1989), 191 Ill. App. 3d 694, 700, 547 N.E.2d 1383, 1388.) No violation of the hospital's bylaws is alleged here.

Plaintiffs nevertheless claim that they are entitled to redress based on the terms of the contractual agreement between Beasley and St. Mary's Hospital. Their view, apparently, is that the contract afforded Beasley greater protection against termination than he would have had under the bylaws alone. In fact, the contrary is true. The

agreement specifically provides that it controls in the event of any conflict between the terms of the agreement and the medical staff by-laws of St. Mary's Hospital. Under the agreement, Dr. Beasley was not automatically entitled to the hearing and appeal rights set forth in the medical staff and hospital bylaws in the event of termination of the agreement by St. Mary's Hospital, and Dr. Beasley could be terminated for reasons other than noncompliance with the rules, regulations, policies, directives and bylaws of the hospital and medical staff. Pursuant to paragraph 26, which we have quoted, the hospital had the contractual right to immediately terminate the agreement with Dr. Beasley, at its option, if Dr. Beasley did not "remain satisfactory" to the hospital in the performance of his duties.

 Contracts in which the promisor's performance is conditioned upon its satisfaction with the promisee's performance have traditionally been divided into two groups, depending upon whether the nature of the promisor's satisfaction is objective or subjective. In contracts involving matters of fancy, taste, sensibility and judgment, the nature of the promisor's satisfaction is subjective. (*Ray v. Georgetown Life Insurance Co.* (1981), 94 Ill. App. 3d 863, 865, 419 N.E.2d 721, 722.) In such contracts, the decision as to whether a party is satisfied is completely reserved to the party for whose benefit the clause was inserted. (*Forman v. Benson* (1983), 112 Ill. App. 3d 1070, 1074, 446 N.E.2d 535, 538.) That party is the sole judge of his satisfaction, "without regard to the justice or reasonableness of his decision, and a court or jury cannot say that such party should have been satisfied when he asserts that he is not." (*Ray v. Georgetown Life Insurance Co.*, 94 Ill. App. 3d at 865, 419 N.E.2d at 722.) In contracts involving operative fitness or mechanical utility, on the other hand, the nature of the promisor's satisfaction is objective, *i.e.*, that of a reasonable man. Personal service contracts such as the agreement involved in this case generally fall within the first of these two categories. (94 Ill. App. 3d at 865, 419 N.E.2d at 722.) Accordingly, we construe the agreement at issue in this case as allowing termination of the agreement upon the subjective dissatisfaction of St. Mary's Hospital with Dr. Beasley's performance.

 Because the contract incorporated a subjective satisfaction standard, plaintiffs were required to plead that St. Mary's Hospital terminated the contract before the expiration of the terms specified therein, and either (1) that St. Mary's was not dissatisfied with Dr. Beasley, or (2) that St. Mary's, whether dissatisfied or not, did not terminate Beasley on account of its dissatisfaction with him. (See 94 Ill. App. 3d at 866, 419 N.E.2d at 722-23.) Plaintiffs did not do this

properly. Although they allege that St. Mary's "termination of the contract was not because Dr. Beasley failed to remain satisfactory to the hospital in the performance of his duties," the only basis they give for this conclusion is their claim that Dr. Beasley did not, in fact, engage in the improper conduct alleged in the termination letter and that he "performed his duties in an objectively reasonable fashion." We do not believe that this is enough.

Where, as here, a contract incorporates a subjective satisfaction standard, the objective reasonableness of the obligee's performance is not dispositive. If the obligor is dissatisfied with the obligee's performance, the contract may be terminated even if the obligor's dissatisfaction is unreasonable. The only limitation is that the obligor's decision to terminate the contract based on dissatisfaction must be made honestly in accordance with his duty of good faith and fair dealing. (Restatement (Second) of Contracts §228, comment *a*, at 182 (1981).) Plaintiffs' fifth amended complaint contains no factual allegations which suggest that this was not the case here. Accordingly, we cannot say that the circuit court erred in dismissing counts I and II with prejudice for failure to state a cause of action.

We turn then to the sufficiency of counts III through VIII. In those counts, plaintiff Beasley seeks recovery from defendant St. Mary's Hospital (counts III, IV and VII) and Sister Clarette (counts V, VI and VIII) based on defamation. Each of these counts is based on the contents of the termination letter sent to Beasley by Sister Clarette in her capacity as chief executive officer of St. Mary's Hospital. In counts III and V, Beasley simply sets out his basic defamation claims and asks only for compensatory damages. Counts IV and VI seek punitive damages based on willful and wanton misconduct. Counts VII and VIII also seek punitive damages, but on the grounds that if the defamatory matter should be found to fall within a qualified privilege, defendants should nevertheless be held liable because they acted with actual malice.

Although each of the defamation counts refers generally to Sister Clarette's termination letter, the specific portion of that letter to which Beasley takes exception is the second paragraph, which we shall set forth again. It states:

> "On September 13, 1986, Mr. Clyde Wangler presented himself at St. Mary's Hospital Emergency Room in physical distress. After review of the entire incident, your unwillingness to provide the minimal amount of emergency intervention in lieu of the arrival of Dr. Pernot, in my estimation, borders on gross neglect. St. Mary's Hospital cannot and will not tolerate this

type of patient care in our Emergency Room."

 Beasley alleges that these accusations of wrongdoing are completely untrue and that they are defamatory *per se*. Words are considered defamatory *per se* in Illinois if they (1) impute the commission of a criminal offense; (2) impute infection with a loathsome communicable disease; (3) impute inability to perform or want of integrity in the discharge of duties of office or employment; or (4) prejudice a party, or impute lack of ability, in his trade, profession or business. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 238-39, 552 N.E.2d 973, 982.) To the extent that the letter here charges Beasley, an emergency room physician, with having been unwilling to provide a patient with "the minimal amount of emergency intervention," we think that it clearly falls within the third and fourth of these categories.

 Defendants nevertheless argue that the letter is not actionable because it is nothing more than an opinion. This argument must be rejected. In *Mittelman·v. Witous* (1989), 135 Ill. 2d 220, 239-44, 552 N.E.2d 973, 982-84, our supreme court did hold that even words which could be considered defamatory *per se* may not be actionable if they are constitutionally protected expressions of opinion. Since then, however, the United States Supreme Court has ruled that no additional, separate consitutional privilege for opinion exists. (*Milkovich v. Lorain Journal Co.* (1990), 497 U.S. ___, 111 L. Ed. 2d 1, 110 S. Ct. 2695.) Although the Supreme Court continues to recognize that statements that cannot reasonably be interpreted as stating actual facts about an individual are protected from liability (497 U.S. at ___, 111 L. Ed. 2d at 19, 110 S. Ct. at 2706), we do not read the allegation here regarding Beasley's failure to provide minimal emergency intervention as anything other than a statement of fact.

 We likewise find no merit to defendants' conclusory argument that the statements contained in the letter are not actionable because they could reasonably be innocently construed. We can see no innocent, nondefamatory construction for the statements contained in the letter. See *Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 755-62, 469 N.E.2d 679, 681-85.

 For the letter to be actionable, it must, of course, have been communicated to some person other than Beasley. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 300-01, 484 N.E.2d 841, 845.) Here, plaintiff's complaint alleges, and the termination letter attached to the complaint shows, that the defamatory statements at issue in this case were published by defendants to third parties, including Dr. Jerry Beguelin; the hospital's attorney, Phillip Azar; the clerical staff and owners of THP; and an

individual named Anthony Del Vecchio.

Defendants claim that counts III through VI are nevertheless deficient "because Beasley failed to properly allege any facts to show that publication of the letter to these third parties was not subject to a qualified privilege." This argument is not well taken. Privilege is regarded as an affirmative defense. (53 C.J.S. *Liable and Slander* §151 at 229 (1987); see *Dark v. U.S. Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 35, 529 N.E.2d 662, 669.) As such, there is no need for a plaintiff to plead facts showing that a communication is not privileged in order to properly allege a cause of action for defamation. While a motion to dismiss may properly raise the issue of privilege where the allegedly defamatory document and the complaint affirmatively show that the document is protected by a privilege (*Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 489, 484 N.E.2d 1100, 1104), no such showing has been made here.

The essential elements of a qualified or conditional privilege are: "(1) good faith by the defendant, (2) an interest or duty to be upheld, (3) a statement limited in scope to that purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 236-37, 552 N.E.2d 973, 981.) While defendants may ultimately be able to establish that these factors were present, their presence is not evident from the face of the complaint or the termination letter sent to Dr. Beasley. Particularly uncertain is item five. At this stage of the proceedings, we do not know the status of some of the recipients of the letter or why they were given copies of the letter. From the complaint it is not clear, for example, who Anthony Del Vecchio or Dr. Beguelin are and how they figure into this dispute. Under these circumstances, it cannot be said that there was "publication in a proper manner and to proper parties only." Counts III through VI of the complaint were therefore not subject to dismissal on the grounds that the termination letter was protected by a qualified privilege.

As an alternative basis for dismissal of counts III and V, defendants argued that Beasley's allegations of fault were insufficient. This argument must also fail. In counts III and V, Beasley seeks to hold defendants liable based on their negligence. If defendants were protected by a qualified privilege, this would not be enough. Beasley would have to plead and prove actual malice. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 237-38, 552 N.E.2d 973, 981.) As we have just discussed, however, it is not apparent fom the pleadings that a qualified privilege applies here. Given this, and given that

Beasley is not seeking punitive damages in counts III and V, a claim that the defamation was made negligently will support his cause of action. See *Owens v. CBS, Inc.* (1988), 173 Ill. App. 3d 977, 994-96, 527 N.E.2d 1296, 1308-09.

██ As grounds for his negligence claim, Beasley alleges in count V that defendants

> "failed to make a reasonable inquiry into the truth or falsity of the matters set forth in the termination letter *** in one or more of the following ways:
>
> a. failed to conduct an investigation of the matter which included an interview with the plaintiff, Beasley;
>
> b. failed to contact the alleged complaining persons to interview the facts of the matter with them, and specifically, failed to contact persons involved in the Wangler incident, and also failed to contact alleged other complaining patients;
>
> c. failed to review Dr. Beasley's conduct with physicians licensed to practice medicine to determine whether his performance met with accepted standards of medical care in the community; and
>
> d. failed to determine through investigation with either Dr. Beasley, Dr. Beguelin or A. Del Vecchio whether Dr. Beguelin and Anthony Del Vecchio had a right to receive the information published in [the letter of termination]."

Count III contains these same basic allegations. There are some differences in the wording, but they are insignificant. In each case, and under the circumstances present here, we believe that these allegations are sufficient to state a claim for defamation based on negligence. Defendants have directed us to no authority which supports a contrary conclusion.

██ No other basis has been advanced which would support the circuit court's dismissal of counts III and V, and we therefore conclude that those counts should not have been dismissed. With respect to counts IV and VI, however, we believe that dismissal was proper. The problem with those counts lies in their request for an award of punitive damages. The rule which has been followed in this State is that when punitive damages are sought, actual malice must be established. (*Erickson v. Aetna Life & Casualty Co.* (1984), 127 Ill. App. 3d 753, 764, 469 N.E.2d 679, 687.) In counts IV and VI, however, Beasley does not purport to allege actual malice. He characterizes his claims as seeking to impose liability based on defendants' willful and wanton misconduct. These concepts are not the same.

██ ██ Willful and wanton misconduct essentially constitutes a

tort of aggravated negligence. It is present where injury is caused "intentionally or under circumstances exhibiting a reckless disregard for the safety of others." (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1021, 487 N.E.2d 1281, 1284.) Actual malice exists where a statement is made "with knowledge of its falsity or in reckless disregard of whether it [is] false or true." (*Colson v. Stieg* (1982), 89 Ill. 2d 205, 214, 433 N.E.2d 246, 250.) Although both of these definitions include the term "reckless disregard," "reckless disregard" in the context of actual malice means "proceeding to publish the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth." (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 237-38, 552 N.E.2d 973, 981.) In the case of willful and wanton misconduct, this higher threshold is not required. Conduct may be willful and wanton where, after knowledge of impending danger, a person simply fails to exercise ordinary care to prevent that danger or fails to discover the danger through recklessness or carelessness when it could have been discovered by ordinary care. *Koh v. Village Greens* (1987), 158 Ill. App. 3d 226, 231, 511 N.E.2d 854, 857.

In *Owens v. CBS, Inc.* (1988), 173 Ill. App. 3d 977, 996, 527 N.E.2d 1296, 1309, we recognized that a majority of the members of the United States Supreme Court now seem to agree that the Federal Constitution does not prohibit a private individual from recovering punitive and presumed damages upon a showing of less than actual malice where the statements in question do not involve matters of public concern (*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 86 L. Ed. 2d 593, 105 S. Ct. 2939). Our supreme court has yet to decide whether, as a matter of State law, this lower threshold for recovery of punitive damages will be permitted. Assuming for the sake of argument, however, that our supreme court endorsed this lower threshold, and assuming further that the court would permit recovery of punitive damages where the publication of defamatory matter was made willfully and wantonly, but not with actual malice, this would still be of no aid to Beasley here. The reason is that counts IV and VI do not sufficiently allege that defendants' actions were willful or wanton.

■■ As we have indicated, an action for willful and wanton misconduct requires a showing that injury was caused "intentionally or under circumstances exhibiting a reckless disregard for the safety of others." (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1021, 487 N.E.2d 1281, 1284.) Although Beasley does make a conclusory allegation in counts IV and VI that defendants acted with "conscious

disregard of the circumstances," the specific factual averments he sets forth to support that claim are virtually identical to those in counts III and V, which allege mere negligence based on defendants' failure to make a reasonable inquiry into the truth or falsity of the matters set forth in the termination letter. Absent any further allegations of specific facts which would show that defendants did act willfully and wantonly, and were not merely negligent, counts IV and VI were therefore properly dismissed.

We likewise hold proper the dismissal of counts VII and VIII. Unlike the other defamation counts, counts VII and VIII assume the existence of a qualified privilege. They allege, however, that even if the termination letter were privileged, defendants should nevertheless be held liable because they acted with actual malice. This claim is based on the rule that where a qualified privilege exists, actual malice must be pled and proved to overcome the privilege. (*Mittelman v. Witous* (1989), 135 Ill. 2d 220, 237, 552 N.E.2d 973, 981.) The problem, as with Beasley's willful and wanton counts, is that no specific facts have been alleged which would support a finding of actual malice.

Beasley does aver that the defamatory statements in question were made with "malice," but a bare assertion of malice is insufficient. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 300, 484 N.E.2d 841, 844.) As with the willful and wanton counts, the only specific facts alleged by Beasley to substantiate fault by defendants were essentially the same as those set forth in counts III and V, his negligence counts, which claimed that defendants had not made an adequate investigation. Allegations of failure to make a proper investigation are not sufficient to state a claim for malice. 137 Ill. App. 3d at 300, 484 N.E.2d at 844.

For the foregoing reasons, we affirm the judgment of the circuit court insofar as it dismissed counts I, II, IV, VI, VII and VIII of plaintiffs' fifth amended complaint. We reverse that judgment insofar as it dismissed counts III and V, and we remand this cause for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

WELCH and GOLDENHERSH, JJ., concur.