STEPHEN BAKER et al., Respondents, *v.* CHOCK FULL O'NUTS CORP. et al., Appellants.

First Department, July 9, 1968.

330

*John M. Johnston* of counsel (*White & Case,* attorneys), for appellants.

*Jessel Rothman* of counsel (*Halpern & Rothman,* attorneys), for respondents.

*Per Curiam.* This controversy arises out of three contracts, which the plaintiffs' assignor (hereinafter referred to as the

plaintiff) entered into with the defendant, Peerless Advertising, Inc. The contracts were concerned with the preparation of an advertising campaign to promote three products of the defendant, Chock Full O'Nuts Corporation. The first two contracts were in writing and were with respect to doughnuts and nuts, respectively. The third was oral and looked to the promotion of coffee.

The contracts, similar in terms, provided for the work to be done by the plaintiff in three stages. The first stage called for the presentation by the plaintiff of an advertising campaign " preliminary to the final execution of the advertising itself." Upon the acceptance of such presentation the plaintiffs were to be compensated in the sum of $3,500 for each of the campaigns so accepted. Upon rejection they were to receive $2,000 for each campaign so rejected, without any further obligation on the defendants' part.

Upon acceptance of the preliminary presentation of the campaign, the plaintiff was to proceed with the second stage of the work, i.e., with the final execution of the advertising. In connection with that phase of the work, the plaintiff was to be paid the production expenses for which it had received approval, and " a guaranteed additional fee of five thousand dollars ", based on a percentage of subsequent media billings. Further, plaintiff was to receive additional fees if the billings went beyond the amount needed to arrive at the $5,000 minimum payment. The actual advertising could be considered the third or final stage of the relationship of the parties.

At the outset, we find that the trial court properly held the defendant, Chock Full O'Nuts, to be equally responsible to the plaintiff, as was Peerless Advertising, Inc., — its wholly owned subsidiary. The contract was entered into by Peerless for the benefit of Chock Full O'Nuts, with the full indorsement and approval of Chock Full O'Nuts, which was kept fully informed of all work and progress, and which assumed full responsibility for any amount that would properly become due to the plaintiff in connection with the contracts. We further agree with the trial court in finding the oral contract, with respect to the coffee campaign, to be valid and binding. We likewise agree with the trial court's rejection of the defendant's claim that all of the contracts were void because entered into on the defendants' behalf by one of its officers who had a conflict of interest.

With reference to the payment by defendants of $3,500 on each of the first two contracts — there being no appeal taken from the dismissal of the counterclaims for $7,000, which constituted the afore-mentioned payments, we need not be con-

cerned with this phase of the case. In any event, we think that the trial court acted properly in dismissing such counterclaims. Likewise, the court acted properly in granting but $2,000 on the third contract, the preliminary campaign never having been accepted.

There can be no serious question as to the plaintiff being entitled to payment of its expenses in connection with the production of the advertising, as provided by paragraph 3 of the agreements. The trial court correctly awarded plaintiff the sums found to cover such expenses.

We find difficulty, however, in finding a proper foundation for the award to the plaintiff of $3,500 and $4,500, on the first and second contracts, respectively, for the work done in furtherance of the second stage. While the defendants were not obliged to proceed with actual advertising even if there had been " satisfactory completion of the production of advertising " as provided by paragraph 4 of the agreements, nevertheless upon such completion they were obliged to pay to the plaintiff the guaranteed amount of $5,000 whether or not any actual advertising was done. On the other hand, compensation to the plaintiff for work done on this second stage of the contract was completely contingent upon, not merely completion of the production of the advertising, but only upon the " satisfactory " completion thereof. In other words, should the production of the advertising not be satisfactorily completed, the plaintiff would be entitled to no compensation for the work done on the second stage, except for its expenses. That is not to say, however, that the defendants may, lacking good faith, terminate the contracts at will. Implicit in these contracts, as in every contract, is the requirement that the parties exercise good faith in dealing with one another. If the termination of the contracts by the defendants occurred without there being any showing that the work was unsatisfactory and if, for example, the discharge was merely for the purpose of avoiding further payments to the plaintiff, then we must say that the contract was terminated improperly and that the defendants must be held accountable therefor. It is stated in Corbin, Contracts, (vol. 3A, § 647, p. 104) that " it will not always be found easy to determine by interpretation whether a power to terminate is ' at will,' or is conditional on honest dissatisfaction with the performance ". We hold, that in the circumstance of this case, in order for the defendants to be held harmless for having terminated the contracts on July 19, 1963, they must have done so because of " an honest dissatisfaction with the performance " by the plaintiff.

It is because the trial court, while adverting to the asserted reasons why defendants cancelled the contract, did not make any specific finding as to the actual reason for the termination, that we have difficulty in finding a proper foundation for the awards made on the first and second contracts. We must, therefore, remand this aspect of the case to the trial court for a determination of fact as to what caused the rupture of the relationship, and whether the termination was proper. If proper, then the plaintiff is not entitled to any compensation for stage 2 of the work, except for its disbursements. If improper, then the court may find for the plaintiff in appropriate sums, but in no event more than $5,000 on each contract, for under the terms of these contracts that was the maximum the defendants obligated themselves to pay in the event they did not avail themselves of the work product of the plaintiff in advertising.

Should the court find there is not enough evidence in the record to enable it to make a determination on the above issues, then it may reopen the case to take further testimony so that it may have a proper basis to make an appropriate finding.

We might add, that we find that the trial court properly granted recovery on the fourth cause of action in the sum of $200. We note that the sixth cause of action was dismissed. Consequently, no damage may be awarded on that cause of action, either by adding to the award in the second cause, as was done, or otherwise. If, however, the damages sought to be recovered on the sixth cause can properly be found to flow from the second cause of action, then of course it may be considered in determining the amount due to the plaintiff on the second cause of action.

Accordingly, judgment entered December 13, 1966 should be vacated, on the law, the facts and in the exercise of discretion, and the matter remanded to the trial court for action in accordance with this opinion, without costs or disbursements to any of the parties.

STEVENS, J. P., STEUER, TILZER, McGIVERN and RABIN, JJ., concur.

Judgment unanimously reversed and vacated, on the law, on the facts and in the exercise of discretion, without costs or disbursements to any of the parties, and the matter remanded to the trial court for action in accordance with the opinion *Per Curiam* of this court filed herein.