(August 27, 1987)

■ HAROLD GOLDEN et al., Respondents-Appellants, v WORLD-VISION ENTERPRISES, INC., Appellant-Respondent.—Judgment of the Supreme Court, New York County (Walter M. Schackman, J.), entered August 7, 1986, after nonjury trial, awarding plaintiffs Harold Golden and Golden T.V., Inc. $456,463 on their second cause of action for breach of an employment contract, unanimously reversed, on the law and on the facts, plaintiffs' second cause of action dismissed and judgment is granted in favor of defendant Worldvision Enterprises, dismissing the complaint, with costs.

Plaintiffs' motion to enlarge the record is granted on consent.

Following the summary dismissal of plaintiffs' first cause of action, affirmed by this court in 1984 (106 AD2d 926), the only remaining cause of action to survive to trial was plaintiffs'

second, in which plaintiffs sought to recover $1,000,000 in damages from defendant for the breach of a 1981 employment contract. Pursuant to that contract, plaintiff Harold Golden was employed by defendant as its executive vice-president for marketing, a position for which he was compensated at the rate of $200,000 per annum. The contract provided in relevant part: "In the event in the judgment of the Company, the Employee fails to perform his duties in accordance with the provisions of this Agreement, the Company may permanently terminate the Employee's employment for the entire remaining term of this Agreement."

The four-year term of the employment contract commenced in January 1982. In September of the same year Golden was dismissed.

It has long been the law in this State that where, as here, the satisfactory performance of duty is the condition upon which the continuation of employment depends, it is the employer's prerogative to determine whether the employee is, in fact, living up to the terms of his or her employment *(Hortis v Madison Golf Club,* 92 AD2d 713, 714; *see also,* 5 Williston, Contracts § 675A [3d ed]). In most situations, the employer need not have an objective basis for his dissatisfaction with an employee; the only requirement, and indeed the only relevant point of inquiry by a court, is whether the employer's dissatisfaction was genuine *(Fursmidt v Hotel Abbey Holding Corp.,* 10 AD2d 447; *see also, Baker v Chock Full O' Nuts Corp.,* 30 AD2d 329, 332). This is particularly the case where the job performance of high-level managers is concerned. As has been commented, "Efficient running of an enterprise demands a high degree of trust and cooperation among top personnel; thus upper echelon employees should perhaps have to overcome a higher hurdle to show that their discharge was abusive or retaliatory" (Note, *Protecting At Will Employees Against Wrongful Discharge: the Duty to Terminate Only in Good Faith,* 93 Harv L Rev 1816, 1840 [1980]).

Where a contract provides, as does the one in this case, that the employee must perform satisfactorily, the employer, in defending a wrongful discharge action, need only produce evidence showing some basis for dissatisfaction with the employee's work. It is the employee's burden to prove that the dissatisfaction was not genuine. *(Delano v Columbia Mach. Works & Malleable Iron Co.,* 179 App Div 153, *affd* 226 NY 660.)

Thus, the narrow issue to be tried in the present case was whether defendant dismissed plaintiff because it was genu-

inely dissatisfied with his performance pursuant to the 1981 contract of employment. Unfortunately, the trial court's attention was frequently diverted from this issue to matters preceding the 1981 contract and having no relevance to plaintiff's performance thereunder. In addition, it appears that the court labored under the mistaken impression that defendant maintained that the subject employment contract permitted firing at will. This was simply not the case.

A proper focus upon the relevant evidence and an accurate appreciation of defendant's actual position, which it must be observed was not so obscure, would, we think, have dictated a different result.

The trial testimony disclosed ample basis for defendant's dissatisfaction with plaintiff's performance under the 1981 contract. Although plaintiff Harold Golden had been instructed repeatedly by defendant that as vice-president of marketing, he was not to become involved in sales, he nevertheless frequently strayed into that area. In addition, plaintiff ignored instruction as to the manner in which communications with Taft Entertainment Company, defendant's parent company, were to be effected. Another source of dissatisfaction was a long telephone conversation plaintiff had with a Ken Page, president of the Distribution Division of Lorimar Productions, a potential competitor of defendant. During this communication, plaintiff made disclosures to Page which had the effect of seriously undermining defendant's bargaining position vis-à-vis the BBC for the purchase of the "Dallas" television series. Plaintiff also made comments to Page about defendant's chief executive officer, Daniel O'Sullivan, which proved particularly embarrassing to O'Sullivan when he first learned of them in the context of litigation between defendant and Lorimar over the BBC licensure of "Dallas". Other incidents were recounted at trial in which plaintiff's disloyalty to, and penchant for open criticism of his employer, rose to the fore. Finally, so far as can be gathered from the record, plaintiff's achievements as senior vice-president of marketing were by no means impressive. The one project repeatedly cited by him as an accomplishment was the acquisition of a program package known as "Treasure Hunt" which did not prove profitable. And, although plaintiff knew his employer liked written memoranda concerning his activities, only two memoranda, neither of which was of particular consequence, were entered into evidence at trial.

It must be noted that the trial evidence indicated that defendant had dismissed others from its employ for conduct

similar to that detailed above. There is no indication of any convincing motive for a pretextual firing in this case, nor can it be said, in view of the substantial and essentially uncontradicted evidence of plaintiff's repeated failures to comply with his superior's wishes respecting the manner in which his job was to be performed, that plaintiff otherwise met his burden of establishing that he was dismissed from his executive position in bad faith.

Finally, we reject plaintiff's claim that he was entitled to notice of his employment's impending termination. Plaintiff was well aware of the guidelines he violated, the importance of which O'Sullivan went to great pains to impress upon him. Moreover, plaintiff could not have failed to have been aware of O'Sullivan's extreme displeasure over the "Dallas" episode. The record shows that O'Sullivan had fired another employee before plaintiff for similar "Dallas"-related conduct. Plaintiff, who had long been involved with the volatile entertainment industry, must have known that he was courting his dismissal. Concur—Murphy, P. J., Sullivan, Asch and Smith, JJ.