Jerry M. ARLEDGE, Plaintiff–Appellant,

v.

STRATMAR SYSTEMS, INC.,
Defendant–Appellee.

No. 1542, Docket 91–7141.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1991.

Decided Nov. 1, 1991.

As Corrected Nov. 12, 1991.

---

William M. Laviano, Ridgefield, Conn., for plaintiff-appellant.

James F. Donohue, White Plains, N.Y. (Donohue & Locker, of counsel), for defendant-appellee.

Before KEARSE, MAHONEY, and SNEED *, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Jerry M. Arledge appeals from a summary judgment of the United States District Court for the South-

ern District of New York, Vincent L. Broderick, *Judge*, entered January 9, 1991 in favor of defendant-appellee Stratmar Systems, Inc. ("Stratmar").

Applying New York law in this diversity case, we rule that Arledge's contract with Stratmar was terminable at will, and accordingly affirm.

## Background

Arledge is a citizen of South Carolina. Prior to his association with Stratmar, he worked as a marketing consultant. Stratmar provides marketing services to clients whose products are sold in supermarkets, drug stores, and other retail outlets. Arledge was originally hired by Stratmar in November 1987 as a vice president with responsibility for marketing and sales. Dan Ailloni–Charas, Stratmar's president and chief executive officer, sent Arledge a letter memorializing that employment. The letter, dated November 16, 1987, did not contain a term of duration, but specified base compensation "[f]or the first six months ..., the following six months ..., [and] thereafter." In January 1989, Arledge became a sales representative for Stratmar. This employment also was memorialized in a letter from Ailloni–Charas to Arledge dated January 30, 1989 that Arledge countersigned on February 6, 1989 (the "Contract"). The Contract states in pertinent part:

As per our discussion, following is the understanding of our agreement with you regarding your sales representation of Stratmar's services.

1. Your contractual agreement will go into effect as of February 1, 1989 and is subject to periodical reviews based on performance.

2. You will be working against a $90,-000 draw against billings, in commissionable dollars, of $900,000 for work generated by you for your accounts. Further, you will be entitled to *additional* commissions as follows: 5% on core and fulfillment business; 7% on Shoppers Pay-

---

* The Honorable Joseph T. Sneed, Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Day sales. Commissions are payable after the draw minimum is reached and when client bills are paid.

3. You will be reimbursed for approved travel and entertainment expenses as receipted to the company. Any anticipated, unusual travel or business related expense should be approved by me prior to expenditure. Expenses are reimbursed upon submission of approved "employee expense form."

4. The company will give its best effort to support your sales activity with product, selling materials and office services from its headquarters. You will participate in decision making functions which will help determine the form of these products and materials.

5. You will report directly to me. Attendance at periodic sales meetings and review are required, as are written reports covering activity and progress with clients, as well as business proposals. It is expected that you will adhere to company policy.

6. Attached please find the list of clients assigned to you as of this time. Additions and/or changes to this list may be made as we go along. It is anticipated that you will use your judgment in working out your own schedules and managing your time in providing adequate prime coverage, keeping in mind those accounts that are likely to be most productive for you and for Stratmar.

On April 12, 1989, Stratmar terminated Arledge's employment. In a memorandum to Arledge explaining the action, Ailloni–Charas cited Arledge's alleged failure to "generate contractual agreements" in conformity with certain targets. Ailloni–Charas concluded by stating that Stratmar "can no longer afford to [pay Arledge] for virtually no sales performance at all."

On September 12, 1989, Arledge filed a complaint in the United States District Court for the Southern District of New York alleging that Stratmar had "diverted ... accounts and their profitability in such a manner as to deprive [Arledge] of the commissions and future commissions on the accounts due him" under the Contract, in breach of an implied covenant of good faith and fair dealing, and then terminated Arledge "in breach of [the Contract] and without just cause" when he complained about the diversion. On October 16, 1989, Arledge filed an amended complaint that omitted the accusation regarding diversion of accounts, characterized Arledge's status under the Contract as that of "an independent salesperson/marketing consultant," and reiterated the claim of wrongful termination. After deposing Arledge, Stratmar moved for summary judgment. In an order (and corresponding judgment) entered January 9, 1991, the district court granted Stratmar's motion. The court held that the contract between Arledge and Stratmar was either an employment contract or analogous to an employment contract, and in either event was terminable at will under New York law in the absence of a specified term of duration.

This appeal followed.

### Discussion

We review a grant of summary judgment *de novo*, examining the evidence and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *See Prunier v. Watertown*, 936 F.2d 677, 679 (2d Cir.1991) (collecting cases). The question to be determined is whether there is a "genuine issue as to any material fact," in the absence of which "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Arledge tenders the following arguments on appeal:

(1) The Contract is not subject to New York's "at will" employment rule because Arledge is an independent contractor; and

(2) the Contract is not terminable at will because the Contract requires "best efforts" by Stratmar.

### A. *Arledge as an Independent Contractor.*

■ New York law, which governs this diversity action, continues to provide for employment at will. "It is still settled law in New York that, absent an agreement

establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 506 N.E.2d 919, 920, 514 N.Y.S.2d 209, 211 (1987) (citation omitted). This rule applies "to contracts of employment or exclusive agency, distributorship, or requirements contracts which have been analogized to employment contracts." *Haines v. City of New York*, 41 N.Y.2d 769, 772–73, 364 N.E.2d 820, 822–23, 396 N.Y.S.2d 155, 158 (1977); *see also Foster v. Citrus County Land Bureau, Inc.*, 133 A.D.2d 665, 666, 519 N.Y.S.2d 836, 837 (2d Dep't 1987).

In contesting the applicability of the "at will" rule to the Contract, Arledge argues that the Contract is not analogous to an employment contract because he is an independent contractor. Even assuming that the Contract was between Arledge as an independent contractor and Stratmar, however, the Contract is sufficiently analogous to an employment contract to bring it within the purview of the "at will" rule. Arledge's relationship with Stratmar bore the earmarks of employment: he acted as Stratmar's sales representative; his compensation was tied to his performance; his performance was subject to periodic review; and he was required to attend Stratmar business meetings, submit written reports, participate in the planning of company strategy, and "adhere to company policy." As Arledge acknowledges, the resoluteness with which the New York Court of Appeals has reaffirmed the "at will" rule indicates that exceptions to the rule are discouraged. *See, e.g., Sabetay*, 69 N.Y.2d at 336, 506 N.E.2d at 913, 514 N.Y.S.2d at 213 ("significant alteration of employment relationships ... is best left to the Legislature"); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 301–02, 448 N.E.2d 86, 89, 461 N.Y.S.2d 232, 235–36

(1983) (same). We decline to recognize an exception here.[1]

**B. *The "Best Effort" Requirement.***

 Arledge argues that Stratmar's undertaking to provide its "best effort" in support of Arledge's sales activity, set forth in paragraph 4 of the Contract, precluded termination of the Contract by Stratmar unless in good faith, thus barring application of the "at will" rule. Read in context, however, Stratmar's "best effort" promise is simply a commitment to provide Arledge with the resources he would need to be a successful sales representative. We are given no reason to believe that the courts of New York would regard such an undertaking as inimical to a continuing ability to terminate the Contract, given the absence of "an agreement establishing a fixed duration." *Sabetay*, 69 N.Y.2d at 333, 506 N.E.2d at 920, 514 N.Y.S.2d at 211; *cf. Foster*, 133 A.D.2d at 666, 519 N.Y.S.2d at 837 (when contractual "best efforts" provision made no reference to intended period of performance, intention of parties as to duration properly determined by court as a matter of law); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F.Supp. 712, 730 (S.D.N.Y.1989) (meaning of a best efforts clause " 'properly determined by the court as a question of law from the four corners of the contract' " (quoting *Foster*, 133 A.D.2d at 666, 519 N.Y.S.2d at 837)).

 Nor does any other provision of the Contract, in our view, preclude its subjection to the "at will" rule. We address specifically the provision in paragraph 1 of the Contract that "[Arledge's] contractual agreement will go into effect as of February 1, 1989 and is subject to periodical reviews based on performance." In some cases, the applicability of the "at will" rule may be limited by an agreement that the employer will not terminate as long as the

---

1. Arledge's brief poses the question whether "New York law recognize[s] an exception to the 'at-will' rule in the case of written employment agreements for an indefinite period of time," but does not develop any argument addressed to this issue. We are unaware of any New York authority for such an exception, which would appear at rather fundamental odds with the policy of the New York "at will" rule. *See Sabetay*, 69 N.Y.2d at 333, 506 N.E.2d at 920, 514 N.Y.S.2d at 211 (employment relationship presumed to be a hiring at will "absent an agreement establishing a fixed duration").

employee's performance is satisfactory. *See, e.g., Baker v. Chock Full O' Nuts Corp.*, 30 A.D.2d 329, 332, 292 N.Y.S.2d 58, 61–62 (1st Dep't 1968) (per curiam) (defendant must establish honest dissatisfaction to avoid payment of guaranteed amount contractually due upon plaintiff's "satisfactory completion of the production of advertising"); *Sinclair v. Positype Corp. of America*, 237 A.D. 525, 528, 261 N.Y.S. 900, 904 (1st Dep't 1933) (plaintiff invited to amend complaint to allege that parties agreed employment would last "so long as his services were satisfactory"); *cf. Leifer v. Scheinman*, 179 A.D. 665, 666, 167 N.Y.S. 105, 106–07 (1st Dep't 1917) (parol evidence admissible to prove employment a "yearly hiring" that "could only be terminated for proper cause").

Nothing in this record indicates, however, that the parties intended that the Contract's reference to "periodical reviews based on performance" should mean that Arledge could only be terminated following a periodic review indicating poor performance. As the cases cited in the preceding paragraph indicate, ambiguous contractual language may permit consideration of parol evidence and require findings of fact as to the intent of the contracting parties. We are reluctant to presume such an ambiguity here, however, especially in the absence of parol evidence or even an allegation by Arledge that an ambiguity of this nature exists. *See Amusement Business Underwriters v. American Int'l Group, Inc.*, 66 N.Y.2d 878, 881, 489 N.E.2d 729, 732, 498 N.Y.S.2d 760, 763 (1985) ("[w]hether . . . an ambiguity exists is a question for the court"); *cf. New York v. Home Indemnity Co.*, 66 N.Y.2d 669, 671, 486 N.E.2d 827, 829, 495 N.Y.S.2d 969, 971 (1985) ("if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court"). Further, we note that, as a matter of common sense, every employment contemplates periodic reviews of performance as an aspect of normal employment practices. Such reviews, without more, do not convert an "at will" contract into one that

can be terminated only on a showing of good cause or honest dissatisfaction.

## Conclusion

In view of governing New York law, Arledge has failed to show that there is a "genuine issue as to any material fact" within the meaning of Fed.R.Civ.P. 56(c). The judgment of the district court is accordingly affirmed.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that the contract between plaintiff Jerry M. Arledge and defendant Stratmar Systems, Inc. ("Stratmar"), was terminable at will as a matter of law. I would vacate the summary judgment and remand for trial because, as I read the agreement and the record, there is an issue of fact as to whether Stratmar agreed to employ Arledge as long as his performance was satisfactory, an agreement that, under New York law, would mean that the contract was not terminable at will.

Though under New York law an employment contract that makes no specific provision for duration is presumed to be terminable at will, *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 300–01, 448 N.E.2d 86, 89, 461 N.Y.S.2d 232, 235 (1983), the parties can, by their agreement, limit the employer's right to so terminate. *See, e.g., id.* at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237; *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725, 481 N.E.2d 549, 550, 492 N.Y.S.2d 9, 10 (1985); *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 463–65, 443 N.E.2d 441, 444–45, 457 N.Y.S.2d 193, 196–97 (1982). Such a limitation may be found in an agreement that the employer will not terminate so long as the employee's performance is satisfactory. *See, e.g., Baker v. Chock Full O'Nuts Corp.*, 30 A.D.2d 329, 292 N.Y.S.2d 58 (1st Dep't 1968); *Sinclair v. Positype Corp.*, 237 A.D. 525, 261 N.Y.S. 900 (1st Dep't 1933).

In *Sinclair v. Positype Corp.*, for example, the court noted that the complaint before it did not allege a contract of employment for a specified time; but it ruled that the plaintiff could amend his pleading to

allege that the employment was to be for a "term, the duration of which was to extend so long as his services were satisfactory." 237 A.D. at 528, 261 N.Y.S. at 904. In *Baker v. Chock Full O'Nuts Corp.*, the court considered a three-stage contract for advertising services that was silent as to term. The court held that to the extent that the contract implicitly made movement to the next stage of advertising contingent on satisfactory performance of the prior stage, the contract was not terminable at the will of the client. Upon such an inference,

> [i]f the termination ... occurred without there being any showing that the work was unsatisfactory and if, for example, the discharge was merely for the purpose of avoiding further payments to the plaintiff, then we must say that the contract was terminated improperly....

30 A.D.2d at 332, 292 N.Y.S.2d at 62. The court noted that " '[i]t will not always be found easy to determine by interpretation whether a power to terminate is "at will," or is conditional on honest dissatisfaction with the performance....' " *Id.* (quoting 3A *Corbin on Contracts* § 647, at 104). Since the inference that the advertising contract was terminable only for unsatisfactory performance was a permissible one, the interpretation of the contract was an issue for the trier of fact. Thus, the *Baker* court, reviewing a judgment entered after trial, remanded not for a legal ruling but for additional findings of fact and, if necessary, for additional evidence. *See* 30 A.D.2d at 333, 292 N.Y.S.2d at 62; *see also Leifer v. Scheinman*, 179 A.D. 665, 666, 167 N.Y.S. 105, 106 (1st Dep't 1917) (reinstating jury verdict for plaintiff based on parol evidence as to whether "written contract, being silent as to term, was one of hiring at will, terminable by either party at any time [or whether] the parties agreed to a yearly hiring [that] could only be terminated for proper cause").

A contract should be interpreted in a way that ascribes meaning, if possible, to all of its terms, *see, e.g., United States Naval Institute v. Charter Communications, Inc.*, 875 F.2d 1044, 1049 (2d Cir.1989); *Spaulding v. Benenati*, 57 N.Y.2d 418,

425, 442 N.E.2d 1244, 1247, 456 N.Y.S.2d 733, 736 (1982), and where it is susceptible to more than one reasonable interpretation, its construction is a question of fact for trial, and summary judgment is inappropriate, *see, e.g., Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985); *Amusement Business Underwriters v. American Int'l Group*, 66 N.Y.2d 878, 880, 489 N.E.2d 729, 732, 498 N.Y.S.2d 760, 763 (1985) (mem.). In ruling on a motion for summary judgment, of course, the court is required to resolve all ambiguities and to draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). These principles have not been followed here.

The relationship at issue in the present case was formalized by a January 30, 1989 contract in the form of a letter from Stratmar to Arledge and signed by both. The first substantive paragraph of that contract stated: "1. Your contractual agreement will go into effect as of February 1, 1989 and is subject to periodical reviews based on performance." Since the contract nowhere specified its precise duration, it would not be unreasonable to read the performance-review provision, which the parties placed in the paragraph defining the start of the relationship, as indicating the conditions under which the employer could end the relationship. Thus, I think a permissible interpretation of this provision is that Stratmar agreed to continue Arledge's employment unless his performance proved unsatisfactory.

Further, there is evidentiary support for the proposition that the parties regarded Arledge's employment not as terminable at will but rather as terminable if his performance were not satisfactory. Thus, the April 12, 1989 memorandum to Arledge from Stratmar's president terminating the relationship stated in part as follows:

> As you recall, I agreed to continue your relationship with Stratmar with the provision that you would either generate contractual agreements aggregating $250,000, or alternately, two national

participations in the September Shoppers PayDay program by April 15.

Whether reflecting the original agreement or a modification of it, this memorandum plainly indicates that Stratmar had at some point agreed to a limitation on its power to terminate the relationship. Such a limitation contradicts the notion that the relationship was terminable at will. It would surely be permissible to view the Stratmar memorandum as support for the proposition that the January 30, 1989 contract meant that Stratmar agreed not to terminate the relationship so long as Arledge's performance was satisfactory, and as evidence that at some point Stratmar had sought to give Arledge precise objective information as to what he need do to perform satisfactorily. If a jury, looking at the language of the contract and at this memorandum, found that the contract was not terminable at will, the court could not properly enter a judgment in favor of Stratmar notwithstanding the verdict. *See, e.g., Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 889 (2d Cir.1988) (on motion for judgment notwithstanding the jury's verdict, court must view the evidence in light most favorable to nonmoving party and draw all reasonable inferences that the jury might have drawn in his favor). Since the same standard applies to a motion for summary judgment, *see generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524, at 541–42 (1971) (standard for judgment notwithstanding verdict mirrors standard for directed verdict); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12 (standard for directed verdict mirrors standard for summary judgment), summary judgment in favor of Stratmar on the present record was improper.

Arledge might, of course, have had a difficult time proving that his performance was satisfactory, for "[i]n most situations, the employer need not have an objective basis for his dissatisfaction with an employee; the only requirement, and indeed the only relevant point of inquiry by a court, is whether the employer's dissatisfaction was genuine," *Golden v. Worldvision Enterprises, Inc.*, 133 A.D.2d 50, 51, 519 N.Y.S.2d 1, 2 (1st Dep't 1987). Nonetheless, the satisfaction question remained an issue of fact for trial. *See, e.g., Hortis v. Madison Golf Club, Inc.*, 92 A.D.2d 713, 714, 461 N.Y.S.2d 116, 117 (4th Dep't 1983) (upholding fact findings against the employer).

In sum, the language of the contract here is subject to more than one reasonable interpretation, and there is evidence from Stratmar itself to support the interpretation that it agreed to continue Arledge's employment unless his performance was unsatisfactory. Summary judgment dismissing the complaint was therefore inappropriate.