62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank CLAY, a/k/a, Frank Stevenson, Defendant-Appellant.
 No. 95-1161.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 28, 1995.
Decided July 31, 1995.
 
 Before FLAUM, RIPPLE and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Frank Clay, also known as Frank Stevenson, was convicted by a jury of two counts of bank fraud, 18 U.S.C. Sec. 1344. Because Clay was indigent, he was appointed an attorney to represent him at trial. His attorney filed a notice of appeal from the judgment. The attorney subsequently filed a motion, pursuant to Circuit Rule 51, to withdraw as Clay's counsel because no nonfrivolous appellate issues existed. Along with the motion, counsel filed a brief as required by Rule 51(a) and Anders v. California, 386 U.S. 743 (1967). In the brief, the attorney suggests arguments that might be raised on appeal, and why those arguments are frivolous. Clay responded to his attorney's motion and brief by filing a statement raising the same and additional issues for appeal.
 
 BACKGROUND
 
 2
 Clay's conviction stemmed from a check kiting scheme where he opened various bank accounts using names of nonexistent people, nonexistent corporations, his name, or his alias. In August 1993, Clay wrote a $30,000 check to Joanne Golden, cousin of Clay's live-in girlfriend, Kimberly Watt. Golden deposited the check, then waited for it to clear. A week later Golden went to the bank to withdraw the money, driven by Clay and Watt in Clay's Jaguar. She and Watt entered the bank, and Golden withdrew $25,000 cash. Once in the car, Golden gave Clay the money. Clay then handed Golden $5000 as a gratuity for conducting the transaction. The next few days were uneventful, but a week after she withdrew the money, Golden was informed by the bank that the check was not supported by sufficient funds. Golden confronted Clay, who told her it was a mistake.
 
 
 3
 In August, 1994, Clay wrote a $50,000 check to Alice Barkley. Clay (who was using the Stevenson name) and Barkley agreed that he would invest in her new business. Although Clay's check to Barkley was for $50,000, Barkley was to receive only $20,000. Clay was to receive the rest of the money in cash. Barkley deposited the check into her savings account, and inquired about when she could withdraw the money as cash. She was told that the funds would be available in a week. A week later Barkley attempted to withdraw the money. She was told that it was not available, but if she returned the next day, she could get the money. When Barkley did that, she was met at the bank by security personnel and FBI agents. The agents accompanied Barkley to her home to await a prearranged telephone call from Clay, who intended to get the money from Barkley that day. The call came as planned, and Clay arranged to meet Barkley at a drugstore. When Clay arrived at the drugstore in a chauffeured white limousine, FBI agents arrested him.
 
 
 4
 Watt testified to the incident with Golden, and to another incident for which Clay was not charged. Watt also testified that the handwriting on the applications for the various bank accounts looked like Clay's, regardless of the asserted identity of the applicant. She was cross-examined on this point and conceded that she did not see Clay filling out those applications.
 
 
 5
 The documentary and testimonial evidence showed a web of nonexistent people writing checks for nonexistent funds from accounts created with false information. The evidence, such as addresses and telephone numbers, showed Clay as the source of the falsehoods. The prosecution presented testimony from Golden, Watt, Barkley, and banking personnel for the financial institutions where Clay set-up the various accounts. The defense called a bank investigator and an FBI agent. The bank investigator's testimony impeached Golden's testimony on some nonmaterial issues, but the FBI agent did nothing to rebut the prosecution's evidence. On cross-examination, the FBI agent contributed further evidence of Clay's wrongdoing.
 
 
 6
 The jury returned a guilty verdict in two hours.
 
 ANALYSIS
 
 7
 Counsel raises three arguments in his Anders brief and Clay adds two more in his response. The first issue is the district court's denial of Clay's motion to sever the two counts of the indictment. The district court maintains discretion to grant or deny such motions, and we will reverse the denial of the motion only if Clay was actually prejudiced. United States v. Boykins, 9 F.3d 1278, 1289 (7th Cir.1993); see United States v. Lopez, 6 F.3d 1281, 1285 (1993) (considering motion to sever from trial with codefendant). Prejudice will be found if Clay did not receive a fair trial--not just that his chances of acquittal may have improved with a separate trial. Lopez, 6 F.3d at 1285. The evidence was not complicated, and the presentation of the evidence was straightforward. The jury was capable of applying the evidence relevant to each count. United States v. Lotsch, 102 F.2d 35, 36 (2d Cir.1939) (L. Hand, J.) An argument otherwise is not well grounded, and is frivolous. See United States v. Eggen, 948 F.2d 848 (7th Cir.1993).
 
 
 8
 The second argument concerns the district court's decision to allow only $500 for the appointment of a handwriting expert for Clay, despite Clay's request in his motion for $750 to $2000. We reverse such decisions only if they are clearly erroneous. See United States v. Binder, 794 F.2d 1195, 1201 (7th Cir.1986). Criminal law allows for appointment of experts that are necessary for the defendant's adequate representation. 18 U.S.C. Sec. 3006A(e)(1). Unless Clay can demonstrate that a handwriting expert was necessary for his adequate representation, the district court's decision will stand. Clay's motion was based on the belief that the government would present a handwriting expert to testify that the writing on the bank applications and the checks was Clay's. An event, Clay argued, that was "certain to occur". Nor did the government focus on the handwriting. Rather, the government elicited from Watt that the handwriting either was Clay's, or looked like Clay's, depending on the document. The defense effectively challenged this testimony on cross-examination. An appellate challenge to the district court's decision would be groundless.[1]
 
 
 9
 The third argument attacks the sufficiency of the evidence. We will reverse a jury verdict for insufficient evidence if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime. United States v. Moede, 48 F.3d 238, 241 (7th Cir.1995); United States v. Howard, 30 F.3d 871, 873 (7th Cir.1994). The evidence showed that Clay wrote checks on underfunded accounts that he established with false information, then intended to receive the cash from those checks. This violates the statute under which he was charged, prohibiting the knowing execution, or attempted execution, of a scheme or artifice to defraud a financial institution. 18 U.S.C. Sec. 1344. We have read the trial transcripts and reviewed the physical evidence. The case against Clay was thorough and the testimony against him was consistent. He presented no evidence to rebut that testimony. Any attack to the sufficiency of the evidence to convict Clay is frivolous.
 
 
 10
 Fourth, Clay raises an argument that the government failed to prove the essential elements of the crime--specifically that no material misstatement or representation was made as required under 18 U.S.C. Sec. 1344(2). But Clay was prosecuted under Sec. 1344(1), and his argument is frivolous.
 
 
 11
 Last, Clay argues that he should not have received a adjustment to his base offense level for more than minimal planning of the crime. United States Sentencing Guidelines Sec. 1B1.1. In United States v. Brown, 47 F.3d 198 (7th Cir., 1995), we upheld the "more than minimal planning" adjustment in a bank fraud case that involved a ponzi scheme, not unlike the check kiting scheme here. The establishment of accounts, the check writing between the accounts, and the duping of Golden and Barkley, illustrate that Clay's crime was neither simple nor opportune and warranted the adjustment. Because the enhancement was appropriate, an appellate attack on it is frivolous.
 
 CONCLUSION
 
 12
 We have examined the record for any further issues that may be nonfrivolous. Our review revealed none. For this reason, the motion to withdraw is GRANTED and the appeal is DISMISSED.
 
 
 
 [1]
 In order to justify such an expenditure, Clay also was required to make a satisfactory showing that he was unable to pay for the expert. Binder, 794 F.2d at 1201. Clay's motion is scant on that issue, and the evidence of Clay's assets prior to his arrest indicates he would be able to bear a portion of the expert's fee