814 A.2d 602

MICHAEL SILVESTRI, PLAINTIFF–RESPONDENT, AND FRAN-CISCO CELESTINO, PLAINTIFF, v. OPTUS SOFTWARE, INC., A NEW JERSEY CORPORATION AND JOSEPH AVELLINO, IN-DIVIDUALLY, DEFENDANTS–APPELLANTS.

Argued October 22, 2002—Decided January 23, 2003.

116

*Julie Levinson Werner* argued the cause for appellants (*Lowenstein Sandler*, attorneys; *Gregory B. Reilly*, of counsel; *Ms. Werner, Mr. Reilly*, and *Michele Contreras Sadati*, on the briefs).

*Louis E. Granata* argued the cause for respondent (*Granata, Wernik & Zaccardi*, attorneys).

The opinion of the Court was delivered by

LaVECCHIA, J.

This is a breach of contract action. Defendant Optus Software, Inc. ("Optus" or "the company"), a small computer software company, hired plaintiff Michael Silvestri as its Director of Support Services, responsible for supervising the provision of technical support services to the company's customers. Silvestri's two-year employment contract contained a clause that reserved to the company the right to terminate his employment for failure to perform to the company's satisfaction (the "satisfaction clause").

Nine months into the contract, Silvestri was terminated under the satisfaction clause by the chief executive officer of Optus, Joseph Avellino. Silvestri filed this action, contending that the

company's dissatisfaction was objectively unreasonable and that therefore his termination was a breach of the employment contract. The trial court granted summary judgment to the company. The Appellate Division reversed, however, holding that an employer must meet an objective standard for satisfaction in order to invoke a right to terminate pursuant to a satisfaction clause in an employment contract.

The question presented then is whether the employer's satisfaction is subject to an objective or subjective evaluation. We conclude that, absent language to the contrary, a subjective assessment of personal satisfaction applies and that the trial court's grant of summary judgment to the company was appropriate. We therefore reverse the contrary holding of the Appellate Division.

I.

Optus hired Silvestri for a two-year period commencing January 4, 1999, at an annual salary of $70,000. According to the company's president and chief executive officer, defendant Avellino, Silvestri's duties as a manager in this small business encompassed all tasks assigned to him by the board of directors. Specifically, Silvestri was charged with supervision of the support services staff, responsibility for communication with resellers of the Optus computer software to end-users, and coordination of ongoing training for support staff and resellers of the company's products in order to maintain their proficiency in assisting end-users. The employment contract contained a clause allowing termination of Silvestri for "failure or refusal to perform faithfully, diligently or completely his duties ... to the satisfaction" of the company. Termination under that clause relieved the company of any further payment obligation to Silvestri.

The record indicates that Silvestri enjoyed the full support of Avellino during the first six months of his employment. Avellino's communications within and without the organization praised Silvestri's abilities and underscored his role as leader of the support services group. As late as July 16, 1999, Avellino sent an e-mail

message to all members of the group, exhorting them to support their new supervisor. The e-mail referred to the problems Optus had been having in providing technical support to resellers and end-users, stressed that Optus had hired Silvestri to help alleviate those problems, and again asked the staff to support Silvestri.

Although Avellino repeatedly expressed his belief in Silvestri's ability and efforts during those early months, his attitude started to change during the summer months of 1999. In June, July, and August, several clients and resellers communicated to Avellino their disappointment with the performance and attitude of the support services staff generally, and several complaints targeted Silvestri specifically. Avellino informed Silvestri of those criticisms. As the criticisms mounted, Avellino's concerns and frustrations grew, as evidenced by his e-mail exchanges with Silvestri and others. Finally, on September 3, 1999, Avellino told Silvestri that they needed to have a "heart-to-heart" talk about his performance. On September 17, 1999, Silvestri was terminated.

Silvestri filed an action for breach of contract and tortious interference, naming Optus and Avellino as defendants. The complaint named another terminated support services employee as a co-plaintiff, but that employee's claim was dismissed and is not part of this appeal.

Both parties moved for summary judgment relying on copies of the numerous e-mail communications between them. Defendants submitted copies of e-mail messages received from customers expressing difficulties with the delivery of support services, and with Silvestri's attitude toward them. One from Peter Mittler, a large reseller of Optus products, complained to Avellino, as well as to another manager of Optus, about Silvestri's lack of cooperation and his "dour, condescending attitude on the phone [that] made [Mittler] feel like [he] shouldn't be bothering him." Complaints were received from others both outside and within the company who were having difficulty interacting with the support services unit.

In a certification in support of his motion, Avellino explained that he terminated Silvestri because Silvestri had failed to "exhibit the leadership and management skills necessary to perform his duties to the Company's satisfaction." He cited the objective evidence of the complaints received from the various customers and resellers as well as the concerns and frustrations he communicated to Silvestri at the time those complaints increased. The implication of the certification was that Avellino's dissatisfaction was not an after-the-fact justification for termination. The relationship had been deteriorating over time and finally reached a breaking point after Silvestri failed, in the company's judgment, to respond adequately to the numerous customer complaints. Optus is a small company in the business of customer services, and difficulty with support to resellers and end-users of Optus's products carries the potential for significant consequences in such a business.

Silvestri did not assert that there was any reason for his termination other than Avellino's genuine dissatisfaction with his performance. Rather, Silvestri challenged the reasonableness of that dissatisfaction. He portrayed Avellino as a meddling micromanager who overreacted to any customer criticism and thus could not reasonably be satisfied. By way of example, Silvestri focused on the legitimacy of Avellino's concern about the criticism leveled at Silvestri and his support services group by Mittler, characterizing Mittler as someone who simply would not wait his turn for assistance when requesting technical support. It is undisputed that one of Silvestri's innovations was a "queue" system for prioritizing and addressing customer requests for support service assistance. According to Silvestri, Avellino's overreaction to Mittler's criticism demonstrated that the dissatisfaction with his performance was not objectively reasonable, or that at the very least it presented a question for a jury to determine.

On summary judgment, the trial court refused to substitute its judgment for that of the president and CEO of Optus in respect of whether Silvestri's performance was satisfactory to the company.

The Appellate Division, on the other hand, relying on this Court's per curiam decision in *Fitzmaurice v. Van Vlaanderen Machine Co.*, 57 *N.J.* 447, 273 *A.*2d 561 (1971), concluded that an employer must meet an objective, reasonable-person test when invoking a satisfaction clause permitting termination of employment. Finding a triable issue of fact concerning the reasonableness of Avellino's dissatisfaction with Silvestri's performance, the court held that summary judgment was inappropriate, and reversed.

We granted certification, 171 *N.J.* 445, 794 *A.*2d 183 (2002), and now reverse the Appellate Division.

## II.

■■■ Agreements. containing a promise to perform in a manner satisfactory to another, or to be bound to pay for satisfactory performance, are a common form of enforceable contract. 13 *Williston on Contracts* § 38.21 (Lord ed.2000) (hereinafter *"Williston "*). Such "satisfaction" contracts are generally divided into two categories for purposes of review: (1) contracts that involve matters of personal taste, sensibility, judgment, or convenience; and (2) contracts that contain a requirement of satisfaction as to mechanical fitness, utility, or marketability. *See, e.g., Misano di Navigazione v. United States*, 968 *F.*2d 273, 275 (2d Cir.1992). The standard for evaluating satisfaction depends on the type of contract. Satisfaction contracts of the first type are interpreted on a subjective basis, with satisfaction dependent on the personal, honest evaluation of the party to be satisfied. *Williston* § 38.23 ("The party to be satisfied is the sole judge of his or her satisfaction. . . . If the party to be satisfied asserts in good faith that he or she is not satisfied, there can be no inquiry into the reasonableness of his or her attitude."); *see also Medivox Prods., Inc. v. Hoffmann–LaRoche, Inc.*, 107 *N.J.Super.* 47, 58, 256 *A.*2d 803 (Law Div.1969) (concluding that contract implicating satisfaction based on sensibility and taste may only be judged "by the genuineness—not the reasonableness—of [defendant's] dissatisfaction"). Absent language to the contrary, however, contracts of the

second type—involving operative fitness or mechanical utility—are subject to an objective test of reasonableness, because in those cases the extent and quality of performance can be measured by objective tests. *Williston* § 38.24; *Restatement (Second) of Contracts* § 228; 8 *Corbin on Contracts* § 31.8 (McCauliff rev.1999).

A subjective standard typically is applied to satisfaction clauses in employment contracts because "there is greater reason and a greater tendency to interpret [the contract] as involving personal satisfaction," rather than the satisfaction of a hypothetical "reasonable" person. *Williston* § 38.22; *see also* Carey A. DeWitt, *Satisfaction Employment Contracts,* 1992 *Det. C.L.Rev.* 827, 829–30 (1992) (stating that "[w]ith rare and questionable exceptions, courts have held that an employment contract with a satisfaction provision ... is a satisfaction contract calling for the personal, individual satisfaction of the employer.... [O]nly genuine dissatisfaction is required"). In the employment context, "the party to be satisfied is far more likely to feel the need to exercise individual or even idiosyncratic judgment with respect to the retention of the employee ... and to act in accord with his or her sensibilities." DeWitt, *supra,* at 833. *See also Shepherd v. Union Central Life Ins. Co.,* 74 *F.*2d 180, 182 (5th Cir.1934) (observing that in the business employment setting, "a real dissatisfaction [is] the end of the matter, though unreasonable and unjustified by any specific default").

In the case of a high-level business manager, a subjective test is particularly appropriate to the flexibility needed by the owners and higher-level officers operating a competitive enterprise. Note, *Protecting At Will Employees from Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 *Harv. L.Rev.* 1816, 1840–41 (1980). When a manager has been hired to share responsibility for the success of a business entity, an employer is entitled to be highly personal and idiosyncratic in judging the employee's satisfactory performance in advancing the enterprise. *Ibid.; see also Golden v. Worldvision Enters., Inc.,* 133 *A.D.*2d 50, 519 *N.Y.S.*2d 1, 2 (1987) (stating that subjective

standard is particularly appropriate "where the job performance of high level managers is concerned").

■ ■■  The subjective standard obliges the employer to act "honestly in accordance with his duty of good faith and fair dealing," *Beasley v. St. Mary's Hosp. of Centralia,* 200 *Ill.App.*3d 1024, 146 *Ill.Dec.* 714, 558 *N.E.*2d 677, 682 (1990), but genuine dissatisfaction of the employer, honestly held, is sufficient for discharge. *See, e.g., Toussaint v. Blue Cross & Blue Shield of Mich.,* 408 *Mich.* 579, 292 *N.W.*2d 880, 896 (1980) (stating that "the employer may discharge under a satisfaction contract as long as he is in good faith dissatisfied with the employee's performance or behavior"); *Tow v. Miners Mem'l Hosp. Ass'n,* 305 *F.*2d 73, 76 (4th Cir.1962) (stating that employer's right to terminate pursuant to genuine dissatisfaction is "absolute, conclusive, and binding upon the parties, without the investigation of his reasons") (quotation omitted).

■■■■  Although broadly discretionary, a satisfaction-clause employment relationship is not to be confused with an employment-at-will relationship in which an employer is entitled to terminate an employee for any reason, or no reason, unless prohibited by law or public policy. *Witkowski v. Thomas J. Lipton, Inc.,* 136 *N.J.* 385, 397–98, 643 *A.*2d 546 (1994). In a satisfaction clause employment setting, there must be honest dissatisfaction with the employee's performance. The employer may not claim "dissatisfaction" as the reason for termination when another reason is the actual motivation, even if that other reason is neither discriminatory nor contrary to public policy and would therefore pass muster as the basis for discharge of an at-will employee. Moreover, the dissatisfaction with the discharged employee must be honest and genuine. If, however, the employer's dissatisfaction is honest and genuine, even if idiosyncratic, its reasonableness is not subject to second guessing under a reasonable-person standard. In other words, standing alone, mere dissatisfaction is sufficient so long as it does not mask any other reason for the adverse employment action.

Thus, as in an at-will employment setting, the burden of persuasion is on the employee challenging termination under a satisfaction clause in an employment contract. The employee prevails in such a cause of action "if he proves that he was discharged before the expiration of ... the contract, and either (1) that the employer was not dissatisfied with him, or (2) that the employer, whether dissatisfied or not, did not discharge him on account of the dissatisfaction." *Ray v. Georgetown Life Ins. Co.,* 94 *Ill.App.*3d 863, 50 *Ill.Dec.* 613, 419 *N.E.*2d 721, 722–23 (1981).

### III.

The Appellate Division felt obligated by the holding of *Fitzmaurice v. Van Vlaanderen Machine Co.,* 110 *N.J.Super.* 159, 264 *A.*2d 740 (App.Div.1970), *aff'd per curiam,* 57 *N.J.* 447, 273 *A.*2d 561 (1971), to apply an objective standard to this satisfaction clause. However, the peculiar facts in *Fitzmaurice* distinguish the contract there from a true promise to render performance consistent with the other party's "satisfaction."

In *Fitzmaurice,* the plaintiff was a business consultant who entered into a one-year contract with the defendant. *Id.* at 162, 264 *A.*2d 740. The contract contained a clause by which the plaintiff agreed to release the defendant from its payment obligations after three months if the defendant did not find the plaintiff's consulting services to be "profitable." *Ibid.* The defendant did terminate the plaintiff, and the question presented was whether the contract was one for personal satisfaction, relieving the defendant from having to show an objectively reasonable basis for its decision to terminate. *Id.* at 162–63, 264 *A.*2d 740.

The Appellate Division held that inclusion of the word "profitable" in the clause, rather than "satisfactory," contemplated that performance would be "measurable by commercial standards" and, therefore, susceptible to an objective reasonableness standard. *Id.* at 163–64, 264 *A.*2d 740. This Court affirmed. *Fitzmaurice, supra,* 57 *N.J.* at 450, 273 *A.*2d 561. We interpreted the contract as involving "operative fitness, utility[,] or marketability," thus

calling for an objective test for satisfaction, *i.e.*, the showing of an objectively "reasonable basis for [defendant's] dissatisfaction with the promisee's performance." *Id.* at 449–50, 273 *A.*2d 561. That is consistent with similar cases generally applying an objective test for satisfaction when "commercial or financial matters are involved" absent language suggesting otherwise, as opposed to those contractual settings involving "artistic taste, feasibility of operation, or management," wherein a subjective standard of satisfaction generally applies. *Hutton v. Monograms Plus, Inc.*, 78 *Ohio App.*3d 176, 604 *N.E.*2d 200, 205 (1992).

*Fitzmaurice* thus teaches that the language of the contract itself must be examined to determine context and the parties' intentions concerning the standard for evaluation of the promisor's performance. There, the use of "profitability" (understood to mean "benefit"), rather than "satisfaction," as the measure of performance implied in that context an intention to resort to an objectively measurable evaluation. *Fitzmaurice* does not resolve the question of which test to apply to a typical satisfaction clause in an employment contract, such as was used here.

We hold that a subjective test of performance governs the employer's resort to a satisfaction clause in an employment contract unless there is some language in the contract to suggest that the parties intended an objective standard. There is no such language here. Nothing in the text of the satisfaction clause suggests that dissatisfaction was to be measured by any standard other than the employer's good faith, unilateral judgment. We are, moreover, persuaded that in the circumstances before us, application of another's notion of satisfactory performance would undermine recognized and accepted notions of business judgment and individualized competitive strategy, as well as principles of freedom of contract. Idiosyncratic judgments as to what constitutes satisfactory performance are expected and should be permitted. The employer, not some hypothetical reasonable person, is best suited to determine if the employee's performance is satisfactory. Accordingly, notwithstanding the thoughtful dissent by our

colleagues who favor application of an objective test, a subjective test shall apply generally to satisfaction employment contracts, unless the language of the contract signals otherwise.

Turning then to application of the subjective test in this setting, and granting Silvestri the benefit of all inferences in this motion record as we must, *Gaines v. Bellino*, 173 *N.J.* 301, 303–04, 801 *A.*2d 322 (2002), we conclude that the entry of summary judgment in favor of defendants was appropriate. The only issue available to Silvestri is whether the dissatisfaction with his performance was genuine, and he has failed to make a *prima facie* showing that it was not. Indeed, he does not even assert that it was not genuine, and he neither pleaded nor raised any issue of illegal or improper motivation for his dismissal. His moving papers attacked only the reasonableness of Avellino's dissatisfaction by contending that another more reasonable person would have otherwise viewed the merits of his performance. Consistent with that position, Silvestri sought to show that even when he did encounter difficulties with resellers and customers of Optus, the problems were not entirely his fault. Thus, applying the test of genuineness, and not reasonableness, we conclude based on the overwhelming evidence in this record that Silvestri has not demonstrated that a dispute exists requiring submission of the matter to jury trial.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded for entry of summary judgment in favor of defendants.

ZAZZALI, J., dissenting.

Because I believe the majority applies the wrong standard in evaluating Silvestri's satisfaction contract for employment, I respectfully dissent. In my opinion, application of an objective standard is appropriate based on both the subject matter and the language of the contract. Applying an objective standard helps to

ensure that the employee is not exposed to the risk of forfeiture, properly places on the drafter of the employment agreement the burden of articulating effectively when a subjective standard should apply, and mitigates the problems of proof inherent in attempting to show an employer's bad faith. An objective standard also is consistent with our ruling in *Fitzmaurice v. Van Vlaanderen Mach. Co.*, 57 *N.J.* 447, 273 *A.*2d 561 (1971). Finally, even if a subjective standard is applied in this appeal, I believe that we should remand for a jury trial on the issue of the genuineness of Optus's dissatisfaction.

As a preliminary matter, I note that "[t]he fact that a contract contains a general satisfaction clause, without more, does not mandate the application of a subjective standard." *Hutton v. Monograms Plus, Inc.*, 78 *Ohio App.*3d 176, 604 *N.E.*2d 200, 205 (1992). By definition, almost all satisfaction contracts condition performance on the obligor's "satisfaction." Mere use of that term should not cause a court to embark reflexively on a narrow inquiry into the genuineness of an obligor's dissatisfaction without considering whether a further inquiry into the reasonableness of that dissatisfaction also is required.

The Second Restatement of Contracts expresses a clear preference for courts to apply whenever practicable a reasonableness standard when interpreting satisfaction contracts. It states:

> When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance . . . and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied.
>
> [*Restatement (Second) of Contracts* § 228 (1981).]

Moreover, when an "obligor would subject the obligee's right to compensation to his own idiosyncracies he must use clear language." *Id.* at cmt. b. *See also Muka v. Estate of Muka,* 164 *Ill.App.*3d 223, 115 *Ill.Dec.* 262, 517 *N.E.*2d 673, 678 (1987) (citation omitted) ("[C]ourts generally prefer a reasonable man standard over a subjective standard when it is unclear whether subjective satisfaction is reserved."). I would argue both that the

contract at issue in this appeal requires a performance by Silvestri that is amenable to objective assessment and that the language of that contract does not foreclose an inquiry into the reasonableness of Optus's dissatisfaction with that performance. Accordingly, I believe that the majority unjustifiably departs from application of the objective standard.

Silvestri's responsibilities under the contract included "supervision of the support services staff, responsibility for communication with resellers of the Optus computer software to end-users, and coordination of ongoing training for support staff and resellers of the company's products...." A jury can evaluate his performance of those duties based on any number of relevant objective indicia including, but not limited to, call wait times, the number of misdirected calls, the number of repeat callers, the amount of time spent responding to customers, the amount of time taken and the expense incurred in training support staff, and complaints or recommendations received relative to his performance. Moreover, the language of his contract simply states that Silvestri may be terminated and his salary forfeited on his "failure or refusal to faithfully, diligently, or completely perform his duties hereunder to the satisfaction of the Company...." Optus did not commit the decision to terminate Silvestri to its sole and absolute discretion, as the plain terms of many satisfaction contracts do and as this contract might have done. An objective standard of reasonableness is therefore appropriate.

More generally, I believe that the better rule is to extend a preference for the objective standard to satisfaction clauses in employment contracts whenever the subject matter or the language of the contract permits its application. By requiring an employer to be reasonable in its exercise of discretion under the satisfaction clause, an employee is better able to anticipate whether his or her performance will justify termination under the contract. Application of such a standard thereby reduces the risk of forfeiture by the employee. As Chief Judge Posner has noted, applying an objective standard in the satisfaction contract context

indulges the sensible "presumption that the performing party would not have wanted to put himself at the mercy of the paying party's whim...." *Morin Bldg. Prods. Co., Inc. v. Baystone Constr., Inc.,* 717 *F.*2d 413, 415 (7th Cir.1983). Accordingly, that presumption should be overcome only "when the nature of the performance contracted for is such that there are no objective standards to guide the court." *Ibid.*

An objective standard also is appropriate when, as in this case, preparation of the satisfaction contract is exclusively within the employer's control. A presumption that the objective standard applies properly places on the drafter of the employment agreement the burden of explicitly invoking application of a subjective standard. *See In re Miller,* 90 *N.J.* 210, 221, 447 *A.*2d 549 (1982) ("Where an ambiguity appears in a written agreement, the writing is to be strictly construed against the draftsman.") (citation omitted); *Medivox Prods., Inc. v. Hoffmann–LaRoche, Inc.,* 107 *N.J.Super.* 47, 61, 256 *A.*2d 803 (Law Div.1969) ("Performance to the sole and final satisfaction of another is not readily implied in the absence of plain language.").

The objective standard also mitigates the problems of proof that inevitably accompany a plaintiff's efforts to show an employer's bad faith. Experience counsels that "direct evidence is seldom attainable when seeking to probe an employer's mind to determine the motivating cause of his actions." *N.L.R.B. v. Bird Mach. Co.,* 161 *F.*2d 589, 592 (1st Cir.1947). As one commentator has noted, "the plaintiff-employee in a satisfaction employment contract suit is put in the difficult position of having to prove that the employer's 'mental state' was such that the employer was actually not dissatisfied with the employer's performance or behavior." Carey A. DeWitt, *Satisfaction Employment Contracts,* 1992 *Det. C.L.Rev.* 827, 836. Stated simply, it is virtually impossible for an employee to disprove the "genuineness" of an employer's reasons for termination when a subjective standard is applied.

The majority also understates our past willingness to extend an objective standard to satisfaction clauses contained in contracts for

employment. In *Fitzmaurice, supra,* cited by the majority, we held that it was proper for the jury to decide whether the employer "had a reasonable basis for dissatisfaction with the plaintiff's performance." 57 *N.J.* at 450, 273 *A.2d* 561. *Fitzmaurice* involved a suit for breach of a contract that conditioned a management consultant's continued employment on his employer finding that his work was "profitable." The majority distinguishes *Fitzmaurice* on the ground that our decision in that appeal rested on the parties' use of the term "profitable," rather than "satisfactory," and suggests that in *Fitzmaurice* we inferred from that choice of language the parties' "intention to resort to an objectively measurable valuation." *Ante* at 125, 814 *A.2d* at 608. In *Fitzmaurice,* however, we recognized that "[t]he term profit in the [contract] was interpreted as synonymous with benefit," and that "the parties frequently indicated throughout the trial that the question of dollar profit was irrelevant." *Fitzmaurice, supra,* 57 *N.J.* at 449, 273 *A.2d* 561. Thus, the fact that the term "profitable" was at issue in *Fitzmaurice* did not result in the consideration of factors any less subjective than those presented here.

Finally, even if the trial court were to apply a subjective standard, the genuineness of Optus's dissatisfaction with Silvestri's performance constitutes an issue of material fact sufficient to defeat summary judgment. *Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 523, 666 *A.2d* 146 (1995). Viewing the competent evidence presented in the light most favorable to the non-moving party, particularly the conflicting certifications submitted by Avellino and Silvestri, a rational factfinder could find that Optus's dissatisfaction with Silvestri's performance was not genuine. *Ibid.* Even so, the myriad of reasons set forth above support an inquiry under the objective, not the subjective standard.

In sum, for all the foregoing reasons and as a matter of sound contract law, I believe that the preferable disposition is to remand to the trial court so that the jury may address whether a reasonable employer in the position of Optus Software would have been satisfied by Silvestri's performance under the contract. More-

over, because of the potential for unfairness inherent in the subjective standard, and in order to provide bright-line direction for the benefit of employers, I would limit future application of the subjective standard to satisfaction contracts for employment to those instances when the clear and explicit language of the contract requires its use or, in the absence of such language, when the subject matter of the contract is wholly unamenable to objective evaluation.

Satisfaction contracts, evaluated under an objective standard of reasonableness, sensibly and fairly position the employee midway on the legal continuum between "at will" and "for cause" employment. Although the majority makes well-intentioned efforts to distinguish satisfaction contracts from relationships of employment-at-will, *Ante* at 123–24, 814 *A.*2d at 607–08, for all practical purposes that distinction cannot be maintained when the propriety of an employer's dissatisfaction becomes a question of subjective "genuineness." To apply such a standard is to create, if not employees-at-will, then employees-at-whim.

Justice LONG joins in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA, and ALBIN—5.

*Dissenting*—Justices LONG and ZAZZALI—2.