**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4469-16T3

IN THE MATTER OF THE
ESTATE OF JOE W. GORDON, JR.,

       Deceased.

_____

Submitted March 19, 2019 – Decided April 11, 2019

Before Judges Rothstadt and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Camden County, Docket No. CP-0130-2014.

David Mayfield, appellant pro se.

Saundra Gordon, respondent pro se.

PER CURIAM

This appeal relates to the administration of the Estate of Joe W. Gordon, Jr., who died intestate on July 1, 2013. On June 23, 2014, almost a year after his death, his wife, Saundra Gordon, filed a verified complaint seeking to be

appointed as the administratrix of the Estate, as Joe's[1] surviving spouse, pursuant to N.J.S.A. 3B:10-2. On November 5, 2014, the court appointed Saundra the administratrix and dismissed a caveat filed by Joe's son, David Mayfield.[2]

Saundra maintained that David and his wife Barbara were responsible for the costs incurred from 2004 to 2016 with respect to two properties Saundra and Joe owned in Philadelphia, Pennsylvania. After taking testimony from David and Saundra, and considering documentary evidence, the court initially entered a judgment against David on behalf of the Estate in the amount of $52,553, which the court later reduced to $34,200 in an April 26, 2017 order. David challenges the April 26, 2017 order as unsupported by substantial, credible evidence in the record. We agree and reverse.

In 2004, David and Barbara operated a hair salon on "the 6700 block of Germantown Avenue" in Philadelphia. According to David, in approximately 2007, he entered an agreement with Joe in which he and Barbara would move

---

[1] For ease of reference, we refer to Joe W. Gordon, Jr., and his wife Saundra Gordon, as, respectively, Joe and Saundra, and David Mayfield, and his wife Barbara Mayfield, as David and Barbara, intending no disrespect.

[2] Alice Cooper, Joe's former wife, also filed a verified complaint seeking to be appointed administratrix, alleging she was Joe's surviving spouse. The court dismissed her complaint in a September 6, 2016 order. She has not appealed that order and is not a party to this appeal.

A-4469-16T3

their hair salon business from Germantown Avenue to his father's properties at 346-348 Chelton Avenue in Philadelphia. At the time of the agreement, David understood that the Chelton Avenue properties were heavily encumbered by outstanding city tax liens. David maintained that he and his father agreed that if he satisfied the outstanding tax liabilities, Joe would "sign the properties over to [him]." He also stated that he "wasn't the only child that stayed in . . . propert[ies] that [Joe] owned," explaining that Joe "let [his daughter] stay in a townhouse [in] [New] Jersey that was in foreclosure . . . rent free."

David testified that prior to his occupancy, the properties were vacant for years and had broken windows, leaking roofs, poor plumbing, and a backed-up sewer. As a result, in 2007 he began repairing the properties by installing new bay windows and fixing the plumbing. In total, David testified that he spent $22,000 on improvements. In 2008, David stated he moved into 348 Chelton Avenue and operated a barber shop there for approximately a year. Barbara moved her salon into 346 Chelton Avenue, where she operated the business from 2008 until 2016.

David stated that soon after occupying 348 Chelton Avenue, he learned that Joe was not the sole owner of the properties, but that Saundra also had an ownership interest. At that point, David considered the "deal . . . off," as he

realized that his father could not unilaterally transfer ownership of the properties to him.

As noted, Barbara continued to operate her hair salon business at 346 Chelton Avenue for a number of years after David vacated 348 Chelton Avenue. Accordingly, Saundra filed a motion to remove her from the property, and on April 22, 2016, the court entered an order directing David, his wife, and "any other relatives, friends, or employees" to vacate the property located at 346-348 Chelton Avenue, on or before May 1, 2016.

The court held a plenary hearing on August 31, 2016, to determine the extent to which David would be responsible for the costs associated with the Chelton Avenue properties. Based on the testimony and proofs submitted at the hearing, the court issued an order on September 6, 2016, in which it determined that David owed the estate "either the costs to maintain the properties or a reduced rental rate during the period of occupancy from July 1, 2004 until December 31, 2013 – whichever results in the lowest amount of arrearage." The court compared "the costs associated with the properties versus a reduced rental rate of $300[] per month for both properties for the time period established," and concluded the reduced rental rate resulted in the lowest amount of arrears, and therefore calculated a judgment based on that rate. The court also found David

4

paid for $11,000 in property improvements and deducted that amount from the imputed rent owed, "resulting in a total due and owing of $52,553" by David to the Estate.[3]

David filed a motion for a new trial and the court conducted another hearing on January 31, 2017. At that hearing, Saundra disputed David's testimony that he and Barbara moved into the Chelton Avenue properties in 2008. Rather, she claimed that they occupied the properties starting in July 2004. Saundra further testified that based on what Joe represented to her, "[t]he agreement [between Joe and David] was [for] no rent, but [for David to] take care of the utilities and the taxes[,] . . . [in exchange for] free use of the buildings . . . " for "as long as he wanted to and he was taking care of the bills."

Saundra also detailed the taxes, water bill charges and fines owed on the properties prior to, during, and after David and Barbara's occupancy. In this regard, she testified that in 2002, there was an outstanding tax liability of

---

[3] We note that David failed to include a transcript of the August 31, 2016 plenary hearing and relevant trial exhibits in his appellate appendix. We do not, however, deem this failure an impediment to our appellate review, see Rule 2:6-1(a)(1)(I), as the September 6, 2016 order sufficiently explains the court's reasoning in support of that order. Further, David submitted the January 31, 2017 and April 26, 2017 transcripts, which detail the factual bases for the April 26, 2017 order under review.

A-4469-16T3

$6,558.47 for the 348 Chelton Avenue property, and in 2005, a tax liability of $6,271.88 for 346 Chelton Avenue. Saundra stated that as of June 2016, she owed $28,797.64 in taxes for 348 Chelton Avenue, and $23,552 for 346 Chelton Avenue.

With respect to utilities and fines, Saundra testified that as of 2005, there was a $14,462.04 outstanding water bill for 348 Chelton Avenue, which decreased to $11,717.93 by 2016. 346 Chelton Avenue also had a $2.40 outstanding water bill in 2010, which increased to $13,954.70 in 2016, after David and Barbara vacated the properties. Saundra stated that this "astronomical" rise was the result of someone tampering with the water meter. She added that the city imposed fines of $3,664 for 346 Chelton Avenue and 348 Chelton Avenue as a result of David improperly leaving trash outside on days not designated for trash removal.

In a January 31, 2017 oral opinion, the court commented on the "the lack of proof" provided to the court, and specifically the absence of a written contract memorializing David and Joe's agreement. The court also observed that Joe never initiated a lawsuit against David, nor sent him a notice to terminate his or Barbara's tenancy at any time prior to his death.

A-4469-16T3

However, the court stated that "there has to be some recognition of [David's] responsibility to pay something during the period of time that he and his wife occupied the property." The court accepted David's testimony that he occupied 348 Chelton Avenue for one year and, because neither party introduced an expert evaluation of the fair rental value of the properties, assessed a $300 per month rental rate, "which [it] thought was well below what the market would have commanded back then," for a total of $3,600. With respect to Barbara's tenancy at 346 Chelton Avenue, the court again accepted David's testimony that she occupied that property for eight and a half years, and applied the same imputed monthly rental rate, which totaled $30,600. The court stated it was applying a quasi-quantum meruit theory, and that "[a]ll [it] did was [apply] a very simple low, very low calculation of what the value would have been." The court rejected David and Barbara's laches argument and stated that the doctrine applied only to Joe, and not Saundra.

Additionally, the court determined it could not include the outstanding water bill in the judgment because "the back bill [for 348 Chelton Avenue] . . . is as high as the bill that [it] had when [David] vacated the property . . . [,] [s]o it's almost like . . . he never incurred a dime of water expenses . . . ." With respect to the increased outstanding water bill for 346 Chelton Avenue, the court

A-4469-16T3

stated that because it was "unsubstantiated completely that there was anything going [on] with the [water] meter," it could not require David to pay these expenses. The court also concluded that "if [David and his wife are] going to pay rent, they don't pay real estate taxes because there's nothing in writing that says that that's the case." Similarly, it found that there was nothing in writing to require David to pay for the trash fines or liens and judgments owed on the properties, and also noted that, according to Saundra's testimony, these payments were not included in the agreement for David to pay for taxes and utilities. The court then set a date for another hearing for the parties to obtain experts or to provide further proofs to evaluate the fair rental value of the properties.

The court held the subsequent hearing on April 26, 2017, but neither party presented an expert evaluation of the properties' fair rental value. Accordingly, in an April 26, 2017 order, the court entered judgment against David for $34,200, representing the $300 imputed monthly rental value for the twelve months David occupied 348 Chelton Avenue and the one hundred and two months Barbara occupied 348 Chelton Avenue and 346 Chelton Avenue. With respect to the imputed rental rate of $300, the court reiterated that it "just picked $300 out of the air because it sounded really low and [it] didn't want to tax

[David] with anything more than that, [with] there never having been a formal lease that [it] was aware of." This appeal followed.

On appeal, David argues that the court's $34,200 judgment was not supported by substantial credible evidence in the record. Specifically, he asserts that there was no written agreement or lease, the taxes and water bills on the Chelton Avenue properties were delinquent prior to his occupation of the buildings, he spent money improving the properties based on his belief that he would eventually obtain ownership, and in other circumstances, Joe allowed each of his children to occupy his properties rent free.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

We do not "disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Cesare, 154 N.J. at 412).

However, we owe no deference to a trial court's interpretation of the law, and review issues of law de novo. State v. Parker, 212 N.J. 269, 278 (2012); Mountain Hill, L.L.C. v. Twp. Comm. of Middletown, 403 N.J. Super. 146, 193 (App. Div. 2008).

Applying these standards, we agree with the court that there is "nothing in writing with regard to any contract for [David] to use th[e] [Chelton Avenue] propert[ies]." As such, the court correctly refrained from imposing an obligation on David to pay the outstanding taxes or water bills. See Silvestri v. Optus Software, 175 N.J. 113, 121 (2003) ("Agreements containing a promise to perform in a manner satisfactory to another, or to be bound to pay for satisfactory performance, are a common form of enforceable contract."); Kieffer v. Best Buy, 205 N.J. 213, 223 (2011) ("The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves."). However, when faced with insufficient proofs to require David to pay those costs, the court erred by entering a judgment of $34,200 based on a quantum meruit theory because the court's factual findings were not supported by substantial credible evidence.

To establish a quantum meruit claim, Saundra, not David, had the burden to prove: (1) performance of services, (2) defendant's acceptance of the services,

(3) the expectation of compensation, and (4) the reasonable value of the services. Starkey v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002). Although it was undisputed that David and Barbara occupied the Chelton Avenue properties to operate their hair styling businesses, from our review of the record, Saundra failed to establish an expectation of receiving monthly rent for the properties from David or Barbara, or the reasonable rental value.

With respect to Joe and Saundra's expectation of compensation, Saundra expressly testified that pursuant to what Joe told her, "[t]he agreement was [for] no rent." In addition, David testified that his occupancy of the properties was not based on the payment of monthly rent, but rather on the understanding with Joe that he would become an owner after he satisfied the outstanding tax liabilities, an agreement that David cancelled after he discovered that Joe was not the exclusive owner of the property and could not satisfy his end of the bargain by transferring ownership of the properties. In addition, there is no evidence in the record that at any point between 2008 (or 2004 according to Saundra), when David and Barbara moved into the property, and 2013 when Joe died, that either Joe or Saundra requested rent from David or Barbara under a lease or an at-will tenancy, or instituted summary dispossess proceedings. See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) ("[P]laintiff [must]

show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant . . . ."). Finally, as David testified, Joe allowed his daughter to occupy another property rent free.

Further, Saundra did not introduce any competent evidence, expert or otherwise, to establish that $300 per month represented reasonable rent for the Chelton Avenue properties. Bereft of documentary or testimonial proofs that would support such a rental value for properties that were vacant for years, and which required significant rehabilitation, the court candidly admitted that it "just picked $300 out of the air" based on its unsupported belief that such a rental value represented "a very simple low, very low calculation of what the value would have been." Thus, the court improperly entered a judgment of $34,200 based on a quantum meruit theory without proof of Joe and Saundra's expectation of compensation for rental payments and the reasonable rental value of the properties.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4469-16T3